## YOUNG v. STEPHENSON et al.

No. 10701—Opinion Filed May 10, 1921.

Rehearing Denied July 19, 1921.

(Syllabus.)

1. **Appeal and Error—Questions of Fact—Findings—Conclusiveness.**

A jury case having been tried to the court without a jury, a general finding by the court in favor of one of the parties will upon review be given the same weight as the verdict of the jury. and where there is any evidence reasonably supporting the judgment of the court. this court will not disturb the same.

2. **Evidence— Presumptions — Legality of Transactions — Burden of Proof—Gambling Contracts.**

The legal presumption is that transactions between parties are not contrary to law, and when the fact does not appear upon the face of the transaction that such transaction is a gambling or wagering contract or against public policy, the burden of proof is upon the party asserting that fact.

3. **Insurance—Nature of Contract.**

In a general sense, insurance is a contract for a consideration to pay a sum of money upon the happening of a particular event or contingency.

4. **Same—What Subject to Insurance.**

Almost any contingent or unknown event, however, whether past or future, which may damnify a person having an insurable interest or create a liability against him may be insured against. Whatever has an appreciable pecuniary value and is subject to loss or deterioration. or of which one may be deprived, or that he may fail to realize, whereby his pecuniary interest is or may be prejudiced, may properly constitute the subject-matter of insurance.

5. **Gaming—Illegal Contracts—Guaranty of Price of Corporation Stock.**

Y., a large stockholder and director and manager of a corporation, for a consideration of one dollar per share, guaranteed if W. et al. would purchase six thousand shares of stock upon the market, defendant would guarantee that said stock would be worth a stated amount upon a certain date, and, relying upon said guarantee, W. et al. purchased said stock upon the market, receiving the certificates of stock. Held, that said contract was not illegal or in violation of the statute prohibiting gambling operations in futures, and an agreed settlement of the amount due is enforceable.

6. **Same—Consideration.**

The actual purchase of the stock of W. et al. and the promise of W. et al. to pay Y. the premium of $1 were sufficient consideration to support said contract.

7. **Compromise and Settlement—Validity.**

Voluntary settlements between parties in respect to their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there are no fraud, misrepresentations, concealments, or other misleading incidents, are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by James A. Stephenson and others against F. A. Young for balance of purchase price of corporation stock. Judgment for plaintiffs, and defendant brings error. Affirmed.

Geo. S. Ramsey, Edgar A. DeMeules, Malcolm E. Rosser, and Villard Martin, for plaintiff in error.

B. B. Blakeney, J. H. Maxey, Christy Russell, and Hubert Ambrister, for defendants in error.

McNEILL, J. This action was commenced in the district court of Tulsa county by James A. Stephenson, William Hargis Walker, and S. DeZell Hawley against F. A. Young. The allegations of the petition were that said plaintiffs had sold to F. A. Young 6,000 shares of stock of Okmulgee Producing & Refining Company for $15 per share, and received in payment certain cash and three notes in the sum of $14,400 each and an agreement upon behalf of Young to pay $19,550 in 30 days. That all of said amounts

were due and unpaid, and judgment was prayed for said amounts and interest.

The defendant, Young, answered, pleading a settlement, and in an amended answer pleaded there was no consideration for the notes, and the transaction was a gambling contract dealing in futures and was void.

A jury was waived and the case was tried to the court. The plaintiffs introduced their evidence and the defendant demurred thereto, which was overruled. The defendant introduced no evidence, and the case was submitted to the court on the evidence of the plaintiffs. The court rendered judgment for the plaintiffs for the full amount sued for, and the defendant, Young, has appealed from said judgment.

James A. Stephenson died pending the appeal in this court, and the case has been revived in the name of his administratrix, Annie L. Stephenson.

The facts relating to this transaction, as testified to by Mr. Walker, are as follows:

"Dr. Hawley, and myself, went to Okmulgee on March 20, 1918. We were discussing Okmulgee Producing & Refining Company conditions. Mr. Young was at that time general manager of the company and a director. Mr. Young said if we would buy two thousand shares apiece at the market price, he would guarantee us in thirty days, fifteen dollars a share for the stock if we would pay him a dollar a share bonus. He said: 'You can buy two thousand shares apiece; you can go that strong on it. You wire me tomorrow at Kansas City, if you purchase the stock.' Mr. Hawley, Mr. Stephenson and myself, after discussing it, decided we would do that and we purchased six thousand shares at $9.70 per share, paying $58,200 therefor. We then sent him this telegram: 'Hawley, Stephenson and myself have purchased six thousand shares Okmulgee today for our joint account.' We received the following telegram from Young in reply: 'Your wire received. I confirm my guarantee as per premium plan.' "

The stock was actually purchased, not from Young, but from brokers in Tulsa, and the certificates of stock were actually delivered to plaintiffs.

Mr. Walker testified that at the end of 30 days the stock was not worth $15 per share, and at the request of Mr. Young the plaintiffs granted an extension of the contract to May 6, 1918. Upon May 6, 1918, the stock was not of the value of $15 per share and the plaintiffs again agreed to extend the time of maturity of said contract until the 17th day of May for the consideration of $1,000. On the 17th day of May, 1918, the stock was not worth the sum of $15 per share, but was only worth about $7 per share, and the parties made a settlement whereby Mr. Young

purchased the stock agreeing to pay $15 per share, or $90,000 therefor. Mr. Walker's testimony upon this point was as follows:

"At that time Mr. Young paid $15,000 in cash; he had previously paid $4,000; and we credited him with a dividend of $2,250; he gave us three notes of $14,400 each, which left a balance of $19,550 due on the contract; we also allowed him the six thousand for making the guarantee."

Dr. Hawley testified as follows:

"And in a general conversation finally he said: 'If you boys want to buy some of this stock I will absolutely guarantee it to you, it will go to fifteen dollars a share, if you will pay me a dollar a share for the guarantee bonus.' "

It was upon this evidence the court rendered judgment for the plaintiffs.

For reversal of the case there are but two questions argued: First, that the so-called contract was a mere wagering contract and was void, and unenforceable for that reason. Second, the contract was unenforceable and void for want of sufficient consideration, under sections 876 and 926, Revised Laws 1910. In considering this question, there are certain well-known principles of law to be considered.

First: A jury case having been tried to the court without a jury, a general finding by the court in favor of one of the parties will upon review be given the same weight as the verdict of the jury, and where there is any evidence reasonably supporting the judgment of the court, this court will not disturb the same.

Second: The legal presumption is that a contract is not contrary to law, unless the same appears upon the face of the contract, and the burden of proving that such transaction was a gambling or wagering contract and against public policy and contrary to law is upon the party asserting that fact. Jennings v. Morris (Pa.) 61 Atl. 115; Bibb v. Allen, 149 U. S. 481, 37 L. Ed. 819; Clews v. Jamieson, 182 U. S. 461, 45 L. Ed. 1186.

It is also settled that if the intent of the parties is a necessary element in determining whether the contract is a wagering contract, or a mere device to avoid the statute, the question of intention of the parties is a question of fact for the jury.

In support of the contention that the so-called contract was a mere wagering contract and void, the plaintiff in error relies upon the principle of law announced in cases where parties purchased goods or property for future delivery at a certain price and the goods were not intended to be delivered, but instead thereof one party was to pay the

other the difference between the contract price and the market price of the goods at the date designated in the contract. If this is such a contract, the same is merely a wagering contract and void. Embrey v. Jamison, 131 U. S. 336, 33 L. Ed. 172; Coffe & Carkener v. Wilhite, 56 Okla. 394, 156 Pac. 169. It is, however, contended by the defendants in error that this is not a wagering contract, nor strictly a contract of guaranty or suretyship, but is an original undertaking in consideration of a certain premium to insure the value of property.

In considering this question, our first inquiry will be to consider what is an insurance contract. It is defined in Elliott on Contracts, vol. 5, sec. 4020, as follows,

"In a general sense, insurance is a contract, for a consideration, to pay a sum of money upon the happening of a particular event or contingency."

In the case of State v. Hogan, 8 N. D. 301, 78 N. W. 1051, 45 L. R. A. 166, the Supreme Court of North Dakota there stated:

"A corporation which undertakes to guarantee a fixed revenue per acre from farming lands, and which, in order to do so, contracts, for a specified consideration, to pay such fixed amount per acre for the crop grown upon said land irrespective of its value, has been held to be an insurance company within the meaning of a statute regulating insurance companies and agents, and defining insurance as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event."

See, also, Shakman v. U. S. Credit System Co. ('Wis.) 66 N. W. 528; Physicians' Defense Co. v. Cooper, 199 Fed. 578, 47 L. R. A. (N. S.) 290; Physicians' Defense Co. v. O'Brien (Minn.) 111 N. W. 396; Claflin v. U. S. Credit System Co. (Mass.) 43 N. E. 293. It is essential in the contract of insurance that the insured have an interest in the property insured.

The rule as to the different character of insurance as stated in Elliott on Contracts, vol. 5, sec. 4028, is as follows:

"Almost any contingent or unknown event, however, whether past or future, which may damnify a person having an insurable interest or create a liability against him, may be insured against. Whatever has an appreciable pecuniary value and is subject to loss or deterioration, or of which one may be deprived, or that he may fail to realize, whereby his pecuniary interest is or may be prejudiced, may properly constitute the subject-matter of insurance."

That all insurance contracts have an element of wager in the same is stated in the Elliott on Contracts, vol. 5, sec. 4031, as follows:

"In an ordinary contract the thing given or done by one party is considered as an equivalent of what is given or done by the other, but an element of wager enters into every insurance contract. If no loss occurs, the insurer gains the amount of the premium; if loss occurs, the insured receives the amount of his loss, which is generally much greater than the premium. By reason of this element of chance the contract is said to be aleatory."

A case which we think is very analogous is the case of Elliott et al. v. Hayes, 74 Mass. (8 Gray) 164, wherein it is stated:

"A guaranty that the owner of stock in a corporation shall receive dividends thereon, of a specified amount for a certain number of years, he paying to the contractor all he receives above that amount, is valid."

In the body of the opinion the court stated:

"If the contract, in the present case, had been put into the form of a policy of insurance, it is certain that it would not have been a wager policy."

This case is referred to in 2 L. R. A. 184, in the note, as follows:

"A guaranty that the owner of stock in a corporation shall receive dividends thereon of a specified amount, for a certain number of years, by paying to the guarantor all he receives above that amount, is valid. It is not a wager, but 'not only in words, but also in its plain design, a guaranty to the plaintiffs of a certain yearly profit on railroad stock owned by them.' " Citing Elliott v. Hayes.

This case was also cited with approval by the Supreme Court of Massachusetts, in the recent case of Vinton v. Pratt, 228 Mass. 468.

The Supreme Court of New York, in the case of Crook v. Scott, 72 N. Y. S. 516, stated as follows:

"Where plaintiff alleged that she purchased stock in a corporation in consideration of an agreement that, if the corporation failed to pay a certain annual dividend thereon, defendant would pay the same, and that the corporation failed and defendant refused to pay, it was not error to refuse to dismiss the complaint on the ground that there was no allegation that plaintiff was the owner of stock at the time of the action."

The Supreme Court of Illinois, in the case of Stewart v. Dodson, 118 N. E. 405, announced the following rule:

"A contract by which the seller of corporation stock agreed to repurchase within a certain time at a stipulated price, should the purchaser desire, further providing that, should the seller offer at any time to purchase at such price and the purchaser then refuse, the contract should be terminated, was not illegal nor void, under the statute prohibiting 'gambling options in futures.' "

The court in the opinion stated as follows:

"The contract discloses that the stock in question had been purchased by plaintiff in error from defendant in error, and that it was this identical stock that defendant in error agreed to repurchase from the plaintiff in error upon 30 days' written demand, at the price specified."

The Supreme Court of Illinois, in the case of Plumb v. Campbell, 18 N. E. 790, stated as follows:

"A written agreement, signed by defendant only, promising to sell certain bonds for plaintiff by a day named at a fixed price, whenever he shall place them at his disposal, defendant to have the excess realized over the given price, if any, for his services, and to make good any deficit in case the bonds sell for less, containing no promise by plaintiff to do anything, becomes mutually binding when performed by plaintiff by placing the bonds under defendant's control, and, though parol evidence is necessary to establish such performance, the contract is one in writing, upon which an action may be brought in ten years."

The Supreme Court of Nebraska, in the case of Lobeck v. Duke, 70 N. W. 36, had before it the following facts: "Lobeck sold corporation stock to Duke, guaranteeing that it could be sold for $3,000 within one year; Duke agreeing not to sell within the year without Lobeck's consent for less than $3,000, and that in case of sale without such consent, Duke should lose the difference between $3,000 and the amount of the sale. Duke agreed to use due diligence in procuring the sale." Duke recovered judgment, and the judgment was affirmed by the court.

The Court of Appeals of New York, in the case of Kernochan v. Murray, 18 N. E. 868, in the first paragraph of the syllabus held as follows:

"A guaranty by one selling stock that the purchaser shall receive dividends thereon equal to a certain percentage, and that he will make good any deficiency, is not terminated by the guarantor's death, unless it is so expressed."

The Supreme Court of Georgia, in the case of Rogers v. Burr, 31 S. E. 438, stated as follows:

"Where a number of persons, for the purpose of inducing others to subscribe for capital stock in a manufacturing company in which all such persons were interested, executed a joint instrument guaranteeing for three years the payment of an annual dividend of 8 per cent. on such stock to subscribers, who would take an amount of stock necessary for successful organization, and stipulating that 'if, at the expiration of said three years, the holder or holders of said stock desire and wish not to carry the same any longer, we hereby agree, with thirty days' notice from any or all of them, to pay each holder par value, or fifty dollars, for each share of stock held by them, their heirs, and assigns; and, if said amount of par value is not paid promptly, we hereby consent that the agreement and guaranty to pay 8 per cent. dividend above set forth shall continue in force until the same is fully paid up.' Held, that if the makers of such a contract were residents of the town in which the manufacturing establishment was to be located, interested in its growth and development, and jointly interested as subscribers in the furtherance of such a common undertaking, this was, in law, consideration sufficient to support the agreement."

We will now direct our attention to wagering contracts. A wagering contract has been defined to be a contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening or not happening of a certain event. Bouvier's Law Dictionary (Rawle's Revision).

One of the conditions in a gambling or wagering contract is that there is no opportunity for both sides to make gains. One must gain, and the other must lose. Rehberg v. Tontine Surety Co., (Mich.) 91 N. W. 132. See State v. Grimes (Minn.) 7 N. W. 4; State v. Shaw (Minn.) 39 N. W. 305. Nor is this such a contract as comes within the provision of chapter 97, Session Laws of 1917, page 146, and is illegal.

The same rule of construction applicable to other contracts is applicable to insurance contracts. The language employed must be understood in its plain, ordinary, and usual meaning, and the intention of the parties must control. What was the intent of the parties in entering into this contract? The plaintiffs in this action purchased stock and invested over $58,000. They were paying the defendant the sum of $6,000 to guarantee them against loss. It is true, the contract provides not against loss, but it provides that the value of the stock should be of a certain value upon a certain date. On the 17th day of May, the date the settlement was made between the parties, the stock was only worth the sum of $7 per share, or about $42,000, and by reason of this fact the plaintiffs had sustained an actual loss of over $16,000. This contract was not dealing in futures because the stock was actually purchased. It was not a wager, but was a contract to guarantee against this kind and character of a loss.

It is suggested in the brief that a contract of insurance is in the nature of a contract of indemnity and cannot be made the subject of profit by the insured. The contention

is supported by the case of Palatine Ins. Co. v. O'Brien (Md.) 68 Atl. 484, and discussed in the case of Davis v. Phoenix Ins. Co. (Cal.) 43 Pac. 1115. We think these cases have no application to the facts in the case at bar. After we determine the contract is in the nature of a contract of guaranty insurance, and the parties settle their rights under the contract, the fact that the same anticipated a settlement of more than the actual loss would be immaterial. A house might be insured for more than its value. This, in the absence of fraud, would not make the policy void, nor would it prevent the insured from recovering the actual amount of his loss. The amount that plaintiffs would have been entitled to recover under their contract has all been foreclosed, because the parties made a settlement and adjusted all their differences under the contract.

This court, in a long line of decisions, has announced the following rule:

"Voluntary settlements between parties in respect to their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there are no fraud, misrepresentations, concealments, or other misleading incidents, are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision."

Counsel for plaintiff in error, however, contend that, the contract being a gambling contract, the notes given in settlement thereof do not change the situation. This perhaps would be true if we held the transaction in the first case was a gambling contract, although there are respectable authorities to the contrary, and it is unnecessary for us to decide which line of authorities this court would follow. We think the evidence supports the judgment of the court, and plaintiff in error failed to overcome the presumption that this was a lawful transaction, and that the finding of the trial court that the same was not a gambling or wagering contract is not clearly against the weight of the evidence. The plaintiff in error urges that the facts are identical with the case of First National Bank v. Carroll (Iowa) 45 N. W. 304, 8 L. R. A. 272. We think the cases can be distinguished. The facts in that case were that Cusick, on December 3d, shipped five cars of cattle to Chicago to sell upon the market and owned a one-half interest in the same. On the 5th day of December, at Crescent, Iowa, Cusick and Carroll entered into a contract, Carroll, paid by Cusick $30, guaranteeing that the cattle would sell for four cents per pound on the Chicago market; it being agreed that Carroll should make good any loss by reason of the cattle selling for less than four cents, and Carroll was to pay Cusick the difference between the price the cattle would sell for in case they sold for less than four cents, and if they sold for more than four cents, Carroll was to have the difference. The court in the opinion used the following language:

"It will be observed that the contract specifies that, in consideration of $30 paid by Cusick, Carroll guaranteed that the cattle should sell for four cents per pound and the validity of the contract is urged because of this payment and of the guaranty, and the case is likened to insurance. If the contract stopped with guaranty, the case might be different, but the use of the word 'guaranty' and the payment of the $30 do not divest the transaction of its gambling characteristics or purpose. The word 'guaranty' can have no other effect than an agreement to pay the difference, and the cash payment, while it might constitute a consideration for a valid agreement to make good a loss, will not cure or make valid what appears to be a mere chance speculation upon prices."

The court construed the entire contract, and from all the facts and circumstances held the same to be nothing but a gambling contract. To the same effect is the case of Johnson v. Kaune, 21 Mo. App. 22. In the case at bar plaintiffs purchased stock in the corporation, and were guaranteed against loss and that the stock should be worth a certain price at a specified time. We are unable to associate the facts in this case with transactions dealing in futures where there was no intention to purchase stock and the parties intended to settle their differences upon the market.

It is next contended there was no consideration for said contract. In the case of Crook v. Scott, supra, it was held that the purchasing by the defendant of the stock was a sufficient consideration to support the contract. Such is the holding in the case of Rogers v. Burr, supra. This position is not well taken for the further reason that the plaintiffs sold the stock to the defendant for an agreed price; the transfer of the stock was a sufficient consideration to support the agreement to pay.

For the reasons stated, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.