**HORANY et al. v. TREESE et al.**

No. 12185—Opinion Filed May 15, 1923.

Rehearing Denied July 24, 1923

**Contracts—Validity—Public Policy—Monopolies.**

An oral contract by the terms of which a party agrees not to equip and operate a competing moving picture show house in a particular building, where the other party to the contract owns and operates, in another building, the only show in the town, is not void as contravening public policy where it is shown that the agreement does not prevent his opening and operating such show in any other building or place in the town.

**2. Bills and Notes—Checks—Consideration.**

Detriment suffered by payee of a check given to induce the payee to release a third party from a burdensome contract is a valid consideration for the check.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Appeal from District Court, Payne County; Arthur R. Swank, Judge.

Action by Sam K. Horany and George K. Horany, partners doing business under the firm name and style of Horany Bros., against A. L. Treese & J. F. Binkley, partners doing business under the firm name and style of Grand Theatre. Judgment for defendants, and plaintiffs bring error. Reversed.

J. M. Grubbs, for plaintiffs in error.

Walter Matthews, for defendants in error.

Opinion by RAY, C. This is an action on a check given by defendants to plaintiffs in the sum of $1,000. The defendants answered that the consideration failed in that it was given for the assignment of a lease on certain real estate in the town of Cushing which was never executed nor delivered. Issue was joined on the defendants' answer and the defendants assumed the burden of proof. The evidence wholly failed to sustain the allegations of the answer, but the court, after making findings of fact and law, directed a verdict for the defendants upon the ground that the contract was in violation of section 987, Rev. Laws 1910 (sec. 5071, Comp. Stats. 1921), and contrary to public policy and therefore void. The court said:

"In this case the defendants have moved that the court direct the jury to return a verdict for the defendants. The facts in this case as disclosed by the evidence are substantially as follows,—I think the jury remembers the facts pretty well. The Horany Brothers were contemplating going into the moving picture show business in the city of Cushing and a man by the name of Gus Howerton owned the building which they thought would be a proper place to go into that business and they contracted with Gus Howerton for the rental of that building by a written contract.

"The defendants Treese and Binkley were already established in the moving picture show business at Cushing and in fact had a monopoly on the business, because the evidence shows that they were the only ones who conducted that business in the town of Cushing. The plaintiffs were coming into competition with them, if they put the deal through as they had in mind. Before anything was done, before the remodeling of the Howerton building, but after the Hor-

any Brothers had ordered their fixtures, the seats and motion picture machine and apparatus that was necessary to carry on the motion picture show, after they had ordered all those things, before they had been delivered and before the building had been remodeled or changed, Treese and Binkley called on the plaintiff, the Horany Brothers, to find out how much they would take not to go into the motion picture business in that place. If they could be induced to give up the proposition. We can infer from that that they meant the proposition was the running of a moving picture show in that place and Treese and Binkley wanted to know how much they would take to give up that proposition and they finally agreed that they would not go into business at that place if Treese and Binkley would pay one thousand dollars. They finally accepted that. Mr. Binkley then wrote out the check for $1,000.00 payable to Horany Brothers and delivered the check to them, or one of them and one of the Horany's took the check to the bank and there wasn't quite enough money to cover the check, and the banker told him to take it back to his bank and deposit it and by the time it went through the clearing, and got back to the bank on which it was drawn there would be sufficient money to take care of it. But before the check got back to the bank on which it was issued Treese went in and stopped the payment on the check. This suit is brought to collect the thousand dollars on the check. Ordinarily men would be held to the agreement. As between those individuals Treese ought to pay the check, as a proposition of man to man, he ought to pay it. Because these men say they gave up their contract with Gus Howerton as a result of this agreement, they canceled the contracts for their equipment and they lost money, and ordinarily courts would enforce agreements where certain rights are involved, unless a question of business policy interferes. Section 987 of our statute provided 'Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections is to that extent void'; and the next two sections are as follows: 'One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer or any person deriving title to the good will from him carries on a like business therein' and 'Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof.' If one has established a business, has established a grocery store, and he desires to sell out he can take a certain sum of money for his business and good will, stock of goods, etc.,

and quit business at that place, and pay him a certain amount not to go in business at that place. He is buying the good will, it is a thing of value, the good will of the business. This is a contract not authorized, and it is void and will not be enforced. If the persons, plaintiffs, had collected the thousand dollars on the check and Treese and Binkley had brought the suit to recover, the law would not have permitted them to recover. The law leaves them where it finds them.

"It will be necessary for the court to sustain the motion and direct the verdict."

In addition to the findings of the trial court, the evidence shows that soon after the lease contract was entered into between Howerton and the plaintiffs, Howerton found that he could not get the material for completing the building as he had agreed to do and asked plaintiffs to be relieved of his contract. The plaintiffs offered to release him for $1,000 claiming that they would be damaged approximately in that amount. Howerton refused to pay it, but in the conversation, one of the plaintiffs suggested that they might get the defendants to pay it. Acting upon that suggestion Howerton brought George Horany, one of the plaintiffs, and J. F. Binkley, one of the defendants, together. They had three meetings at which Howerton was always present. At any of these meetings the terms of the lease or its assignment was never mentioned. They only discussed those things deemed essential to determine the proper amount for the defendants to pay the plaintiffs to "drop the deal" with Howerton. $1,000 was finally agreed upon as the amount necessary to compensate the plaintiffs for detriment suffered by them in "dropping the deal" with Howerton. These, together with the findings of the trial court, are essential facts upon which counsel for defendants relies to sustain the judgment of the trial court.

There are but two questions to be determined: (1) Is this such a contract in restraint of trade as to be unenforceable; and, if not, (2) did the consideration fail for which the check was given?

1. Is this such a contract in restraint of trade as to be unenforceable? We think not. This court in Huber v. Culp, 46 Okla. 570, 149 Pac. 216, said:

"Power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power and should be exercised only in cases free from doubt."

In Barteldes Seed Co. v. Border Queen

Mill & Elevator Co., 23 Okla. 675, 101 Pac. 1130, it is said:

"Contracts cannot be declared illegal and men deprived of their rights thereunder on vague suspicion or speculation."

The agreement complained of was never reduced to writing. The only written instrument connected with the transaction is the check sued on. It is nowhere intimated, either in the findings of the court or in the evidence, that the plaintiffs are now or ever have been in any way restrained from entering the moving picture show business in the town of Cushing. They are as free now to enter the moving picture business in Cushing and community as they were before the agreement was made. But if the result of the agreement was to keep a competing picture show house out of the town of Cushing temporarily, which, under the evidence and findings of the court it may or may not have done, it. is not shown, nor even claimed by counsel for defendants in his brief, that any injury to the public could possibly result.

Many authorities are cited where the courts have held contracts to be in restraint of trade and unenforceable, but no case has been cited applicable to the facts in this case. In the authorities cited, and others examined, are cases where contracts deal in or affect the necessities and not the amusements. That distinction is clearly drawn in Swigert v. Tilden (Iowa) 63 L. R. A. 608, in which Chief Justice Bishop says:

"It is to be noted that a distinction is generally drawn, and with much force, between those trades or occupations on the one hand in which the general public, as such, has some special interest, as, for instance, common carriers, water and light companies and others of a quasi-public character and those trades and occupations on the other hand in which the interest does not arise out of a common necessity but which serve rather to minister to the convenience, or gratify the desires, tastes, etc., of such individual members of the community as care to extend their patronage."

2.   Did the consideration fail?

"The satisfaction of indebtedness to a payee or the release by an obligee of a person who is an obligor in a contract, is a sufficient consideration to support a note or new contract by a third person." Hurford v. Smith, 24 Okla., 448, 103 Pac. 851; Fue v. People's Bank & Trust Co., 56 Okla. 738, 155 Pac. 683.

In Doxy v. Exchange Bank of Perry, 19 Okla. 184, 92 Pac. 150, Burwell, J., quotes with approval from Wright v. McKilbrick (Kan.) 43 Pac. 977, as follows:

"It is sufficient if the consideration was a benefit conferred upon a third person, or a detriment suffered by the promisee at the instance of the promisor."

The evidence does not reasonably tend to show that the check was given for an assignment of the lease as alleged in the answer of defendants, but does show that it was given to induce the plaintiffs to "drop the deal" with Howerton.

There were three parties to this agreement: Howerton, who had leased his property to plaintiffs for a term of five years and had undertaken to build a show house at a cost of approximately $7,000; the plaintiffs, who had leased the property and expended time and money for equipment to enter the show business; and the defendants, who were in the show business and desired to keep out a competing show. The $1,000 check was given as compensation for the loss sustained by the plaintiffs to induce them to relieve Howerton of a burdensome undertaking with the hope and belief that it would result in keeping out a competing show. We think the evidence shows a valid consideration.

The judgment appealed from should be reversed and the cause remanded with directions to the trial court to proceed in accordance with this opinion.

By the Court: It is so ordered.