## FIRST NAT. BANK OF CALUMET v. RODGERS.

No. 17765.   Opinion Filed April 3, 1928.

(Syllabus.)

**Bills and Notes—Waiver of Legal Claim Against Third Party by Payee Sufficient Consideration.**

If the payee of a note parts with value, or waives a legal right, or waives grounds for litigation against the maker, or against a third party by reason of the execution and delivery of a note, the same constitutes a sufficient consideration. And where the evidence is uncontradicted that the payee waived a legal claim or demand against a third party at the time of the execution and delivery of a note, it is error not to instruct a verdict in favor of the payee in a case where the defense is want of consideration.

Commissioners' Opinion, Division No. 1.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by the First National Bank of Calumet against Jerdan Rodgers to recover on a note. Judgment for defendant, and plaintiff appeals. Reversed, and remanded, with instructions.

Embry, Johnson & Tolbert and Bond & Bond, for plaintiff in error.

Morrison & Morrison, for defendant in error.

FOSTER, C. The plaintiff in error, who is plaintiff below, brings this action against the defendant to recover on a note in the sum of $1,944, dated December 6, 1923. The only material defense alleged in defendant's answer was want of consideration.

The evidence shows that in May, 1918, L. B. Myers, president of the First National Bank of El Reno, Leslie Thompson, cashier of the Calumet State Bank, and the defendant, were interested in an oil company known as the Triumph Oil & Development Com-

pany; that the defendant and Leslie Thompson lived at Calumet, and the said Myers resided at El Reno; that in May, 1918, L. B. Myers drew a draft in the sum of $1,906.37, in payment of some oil leases which the said L. B. Myers purchased for the Triumph Oil & Development Company; that said draft was drawn on the defendant through the Calumet State Bank; that on the day said draft was drawn at El Reno, Myers charged the draft to the account of the Calumet State Bank, the said Calumet State Bank having a credit with the First National Bank of El Reno. L. B. Myers was president of both the Calumet and El Reno banks.

According to plaintiff, the draft was presented in its regular course to the defendant, who refused to pay the same, and Myers requested that the draft be held by the Calumet State Bank. The First National Bank of El Reno was notified that the draft had not been paid, and that the same was not a charge against the Calumet State Bank. The evidence is not clear as to whether or not the Calumet State Bank returned the draft to the El Reno bank or held it at Calumet. The defendant testified that he never heard of the draft until after he signed the note and this suit was commenced.

In April, 1919, at the request of Myers and Thompson, the defendant executed a note in payment of said draft, which he says it was agreed he should never have to pay, and at the same time Myers and Thompson executed and delivered to the defendant a note in a similar amount. The defendant testified that Myers and Thompson induced him to execute the note to the Calumet bank above referred to, for the reason that the bank examiner would not permit them to carry the item in its present condition. This note was renewed from time to time, Thompson paying the interest on said note, except on one occasion when the interest was charged to defendant by mistake, and a renewal of this note on December 6, 1923, is the note sued on in this action.

In a letter written by Thompson to the defendant, he indicates his liability to Rodgers on the note which he had delivered to Rodgers. He plainly indicated in the letter, however, that it was the obligation of the company. The plaintiff herein is the successor of the Calumet State Bank.

The case was tried to a jury, who found a verdict in favor of the defendant, on which judgment was entered and this appeal is prosecuted therefrom.

The assignments of error made by the plaintiff may be condensed in the two fol-

lowing propositions: (1) That the evidence was insufficient to sustain the verdict and judgment; and (2) that the court erred in refusing to give certain requested instructions.

The first proposition was raised by the plaintiff on a demurrer to the defendant's testimony, and also by a request for an instructed verdict.

Under the first assignment of error, the sole proposition presented to this court is whether or not there was any consideration for the note given by the defendant in April, 1919.

Section 5019, C. O. S. 1921, on "Consideration," provides as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

We think it is well settled that it is not necessary to the consideration of a note that the maker thereof be benefited. It is sufficient if a benefit were conferred upon a third person or a detriment were suffered by the promisee at the instance of the promisor. Doxy v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150; Fue v. Peoples Bank & Trust Co., 56 Okla. 738, 156 Pac. 683; Horany v. Treese, 91 Okla. 264, 217 Pac. 396.

If the payee parted with value, or waived a legal right, by reason of the execution and delivery of the note, the same is supported by a consideration. Doxy v. Exchange Bank & Trust Co., supra; Sawyer v. Bahnsen, 102 Okla. 41, 226 Pac. 344.

It is also a sufficient consideration if the payee of a note had grounds for litigation against the maker, or a third party, for an amount due to the said payee. Sawyer v. Bahnsen, supra. Also, Llano Improvement & Furnace Co. v. Pacific Imp. Co., 66 Fed. 526.

The evidence in this case clearly shows that the Calumet bank never gave credit on its books for the draft sent by the El Reno bank, and, while the draft was charged by the El Reno bank to the account of the Calumet bank, in all of the dealings between the two banks, from the time the draft was drawn in May, 1918, until the note was executed in April, 1919, the Calumet State Bank insisted that it was not liable to the El Reno bank for the amount of the draft.

And in the reconcilements between the banks, which took place at the end of each month, the Calumet State Bank always showed in its report that its account with the El Reno bank was $1,907 (the amount of the draft) more than what the books of the El Reno bank showed was due to the Calumet State Bank.

On the day the note was executed, in April, 1919, the Calumet State Bank gave the El Reno bank credit for the amount of the note, and thereafter the accounts of the two banks balanced.

It is contended, however, by the defendant, that the money used to pay this draft was the money of the Calumet State Bank, and whether or not it was the money of the Calumet State Bank was a question of fact to be determined by the jury, and the jury having determined this fact, this court is bound thereby.

We cannot agree with this contention, as we do not believe there was any evidence to support a jury verdict. The Calumet State Bank, under the uncontradicted evidence, at least had a claim or a cause of action against the El Reno State Bank, which claim or cause of action it surrendered at the time of the execution of the note by the defendant, and took in lieu of its claim against the El Reno bank the note of the defendant, and released the El Reno bank from any claim or demand which it then had. It seems to us that under the decisions above referred to, this is a sufficient consideration for the note given.

The defendant relies almost entirely upon the case of First Nat. Bank of Poteau v. Allen, 88 Okla. 162, 212 Pac. 597, in which case the cashier of the Poteau bank embezzled money, and in order to keep him from being prosecuted, his brother-in-law deposited a note, payable to the bank, in the sum of $5,000. A few days thereafter his sister, Katie Allen, and his brother-in-law, Andy Allen, executed a note payable to the bank, which note, when delivered to the bank, was accepted in lieu of the note given by Patton, and Patton's note was delivered up to him. The court, in deciding that there was no consideration given for the Allen note, held that under all the circumstances the bank knew that the notes of Allen were given in order to prevent the cashier from being prosecuted, and were given to cover up a shortage, and therefore in violation of public policy, and that by the execution and delivery of the Allen notes, although the Patton note was canceled, the bank did not part with anything of value, and there was

no consideration for its execution, it being merely an accommodation note to the bank, the bank not releasiig the cashier from any liability.

Under the facts in the two cases, we think they are distinguishable. In the Allen Case, no consideration was given nor any detriment suffered by the bank. They simply gave up a note of Patton's which the court and jury found was pursuant to an original understanding at the time the Patton note was given.

In the case of Duncan v. First Nat. Bank of Healdton, 122 Okla. 58, 251 Pac. 69, it is held that, under section 7696, C. O. S. 1921, where the value has at any time been given for an instrument, the holder is deemed a holder for "value" in respect to all parties who became such prior to that time, and under section 7695, C. O. S. 1921, a preexisting or antecedent debt constitutes value.

It will be observed that the defendant nowhere denies that the money for which the draft was originally drawn, and for which the note was finally made and executed, was the debt of the company in which he was interested, it being practically conceded that the money was so used.

At the time of the execution of the original note, Myers and Thompson executed a note in a like amount, payable to the defendant, and it has been held that, where a party gives his note and at the same time accepts the note of others for the same amount, each note constitutes a consideration for the other.

This principle was affirmed in the very recent case of Security Nat. Bank of Tulsa v. Bohnefeld, No. 17749 (130 Okla.—, 267 Pac.——), in an opinion by Justice Lester, handed down by this court on March 20, 1928. In this case the defendant, Bohnefeld, executed a note in the sum of $1,000, and at the same time received from A. E. Lewis and L. W. Lewis a note, payable to himself, in a like amount. In that case, as in the case at bar, he was promised by the officers of the bank that he would never be held liable on the note, and in that case, as in the case at bar, several extensions of the note were made after the execution of the original note.

The cases differ, however, in that, in the Security National Bank Case, it does not appear definitely as to who got the benefit of the note. The defendant, of course, contended that the bank received the proceeds of the $10,000, and that they were therefore not damaged in any way. However, the court found that the execution and delivery of the note to the bank by the defendant, at the same time accepting from Lewis and Lewis, officers of the bank, a note of like amount, was a sufficient consideration. In discussing this case, in the body of the opinion, the court says:

"The commercial and fiscal life of the state is very largely dependent upon the integrity and sound business judgment of those having charge of its banking business. The principal object and purpose of the bank is to invite deposits of money from the public and to use such money in the purchase of interest-bearing securities, or to make loans to responsible persons at a legal rate of interest. * * * Every note that is executed and delivered to a bank for money loaned by it becomes a part of its assets, and every depositor has a right to rely upon such note as being a legal, binding, and valid obligation upon the maker thereof, and any secret or collusive agreement made between such maker and the officers of a bank, to the effect that such bank will not hold the maker thereof liable, is invalid, null, and void."

The last case has not become final, and while we do not contend that it is in exact point, we do believe that the principles announced therein are at least persuasive in the case at bar.

From an examination of all the testimony in this case, and from all reasonable inferences to be drawn therefrom, we believe there was no testimony reasonably tending to support the verdict of the jury, and that the court erred in not directing a verdict in favor of the plaintiff.

In view of our finding, it will be unnecessary to consider the other errors assigned.

It therefore follows that the verdict and judgment of the trial court should be reversed, and the cause remanded, with instructions to the trial court to enter judgment in favor of the plaintiff for the amount sued upon.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 8 C. J. p. 220, §355; p. 1060, §1371; 3 R. C. L. p. 935.