## WRIGHT v. GRABEL.

No. 32258. Feb. 4, 1947.

*177 P. 2d 103.*

Spillers & Spillers and Milsten & Milsten, all of Tulsa, for plaintiff in error.

John R. Woodard and H. L. Smith, both of Tulsa, for defendant in error.

CORN, J. This is an appeal from a judgment in behalf of defendant in an action brought by plaintiff for cancellation of a contract on the grounds of fraud in the procurement and lack of consideration.

Samuel Maddaford and Nellie Maddaford were married in 1898. There was no issue of this marriage, although Samuel Maddaford had one daughter, Goldie Grabel, the defendant herein, by a previous marriage. During the years of their marriage these parties acquired property consisting of a homestead in Tulsa, Okla.; certificates of building and loan stock in Tulsa, Okla., held in joint tenancy with right of survivorship; a small amount of cash, and certain building and loan stock in another state held as tenants in common.

In 1917 Samuel Maddaford made his will, bequeathing everything to his wife, and that upon her death all the remainder go to his daughter, this defendant, and directing that his wife use the estate only for her maintenance and not dispose of it. By a later codicil the will provision requesting the wife to not dispose of the property was eliminated.

Samuel Maddaford died August 11, 1943. The will was admitted to probate, the matter being handled for Mrs. Maddaford by the firm of Milsten & Milsten.

In February, 1944, Nellie Maddaford became seriously ill. A neighbor and close friend, Mrs. Edgett, notified defendant, who lived in Detroit, and the plaintiff, Nellie Maddaford's sister, an elderly lady of 74, a resident of Indiana. Mrs. Maddaford passed away on February 11, 1944, before either plaintiff or defendant arrived in Tulsa. After their arrival in Tulsa and during the time they were considering funeral arrangements, they discussed the matter of the division of the estate. Defendant stated that the estate belonged to her, while plaintiff insisted she should receive something from the estate.

On February 12th, all the parties met

in the Milsten law office and at that time there was some discussion between the parties as to division of the estate. On February 14th, the parties again returned to the law office and further discussion was had, at which time it was determined that Mrs. Maddaford had left no will; and it was pointed out that most of the property of the estate had been held in a joint tenancy with right of survivorship, and it was stated that plaintiff probably would take the entire property. At that time mention was made that it might be best to effect a compromise in settling the estate.

Thereafter there was discussion among the parties wherein defendant stated she thought she should have one-half of the estate. Plaintiff asserted that when defendant asked her to enter into a contract which is the basis of this litigation and she demurred, defendant then threatened that if such settlement was not made defendant would institute litigation and dissipate the estate so plaintiff would receive nothing. Defendant's evidence concerning this feature of the case was that she suggested the best way to settle the matter would be to divide the estate equally, because both parties would receive more in the long run if litigation was avoided. The testimony fairly reflects that during this time plaintiff asserted she would sign nothing, nor agree to a division of the estate.

Defendant and husband left Tulsa and returned to Detroit February 16, 1944, telling plaintiff that if she wished to settle the matter she could contact defendant's attorney, Mr. Woodard, who would handle the drawing up of the contract. After their departure plaintiff requested Mrs. Edgett, the woman with whom she was staying, to call Mr. Woodard and tell him to draw a contract providing for settlement on a basis of one-half to each party. The contract was prepared in triplicate and in the evening was taken to the Edgett home, where it was read and explained to plaintiff and was signed and forwarded to defendant for her signature. Defend-

ant signed the contract and returned same to Mr. Woodard as had been agreed.

Thereafter plaintiff consulted attorneys and became dissatisfied with the agreement, and a letter was written to defendant, and her attorney, Woodard, advising that plaintiff repudiated the contract in its entirety.

On the following day plaintiff instituted the present action, wherein she alleged substantially the foregoing facts, that the property had passed to Nellie Maddaford as surviving joint tenant; that the contract was obtained without consideration for plaintiff giving up an undivided half interest in a valuable estate; that plaintiff's consent to the contract was procured by fraud, duress, menace and undue influence, without which plaintiff would not have signed same, and that she received nothing of value for signing of the contract, and defendant relinquished no rights by entering into the contract.

Defendant's answer was a general denial, other than admitting execution of the contract, and to this plaintiff filed reply in form of a general denial of all affirmative matter. Plaintiff abandoned her cause of action for punitive damages and the matter was tried to the court upon the sole issue as to the validity of the contract.

After hearing this matter at length the trial court specifically found that no fraud, duress, or undue influence was committed by defendant or anyone acting for her; that the written agreement was lawfully and properly entered into and was supported by a valuable consideration, and that plaintiff was entitled to no relief, and accordingly rendered judgment for defendant.

Three propositions are asserted by plaintiff as grounds for reversal of this judgment. The first is that upon Samuel Maddaford's death (August 11, 1943) Nellie Maddaford became seized of all property for two reasons: First, all the stocks were held in a joint tenancy with

Nellie Maddaford, and upon his death she took absolute title as a joint tenant with right of survivorship. Second, under Samuel Maddaford's will, his wife, Nellie Maddaford, became seized of all the property unconditionally. The two remaining propositions deal directly with the contract entered into by the plaintiff and defendant. Inasmuch as this action was brought solely to cancel this contract, it seems that other questions relative to the effect of the survivorship clauses in the stock certificates (representing a large part of the Maddaford estate) and consideration of the will clause devising the estate to Nellie Maddaford, are only incidental to the real questions which are determinative of this appeal.

The first question to be considered is whether there was any consideration to support the contract entered into by the parties. This contract specified that it concerned the legal division of property composing the two Maddaford estates, being building and loan stock certificates in Ohio, and in a Tulsa building and loan company, cash on deposit, and the homestead located in Tulsa. This contract provided as follows:

"But whereas the said Mrs. Quincy M. Wright and the said Mrs. Goldie M. Grabel desire to settle between themselves such dispute and to compromise and settle their conflicting claims on the basis and plan that each of them shall share equally in such property and also in the real estate which was the home of said deceased and located at 715 South Olympia Avenue, Tulsa, Oklahoma, regardless of how title to all such property may have been acquired by either or both of said deceased persons and regardless of how such property may be finally distributed were a final and contested decree be awaited:

"Now, in order to settle, compromise and put at rest all dispute between the parties hereto as to final distribution of said property or the devolution thereof, it is hereby understood and agreed for and in consideration of the benefits that may accrue to each of the parties hereto by saving expense of litigation and in consideration of the time that may be saved in distributing such property and in order to prevent any ill feeling that may arise over the distribution or division of said property, both personal and real and including any and all property that may be derived from or due from any bank or building and loan company or evidenced by any certificate of ownership, that all such property shall be divided equally, share and share alike between the parties hereto, after the costs of administration shall have been paid out of the assets of the said estates, . . ."

Plaintiff's testimony was that she arrived in Tulsa after her sister's death and stopped with Mrs. Edgett. Defendant arrived later and, while discussing matters, defendant declared that she was the sole heir, while plaintiff stated she ought to get something. Thereafter the parties consulted attorneys at different times and discussions were had concerning division of the estate. During these discussions plaintiff testified that defendant proposed they should divide the estate equally, and stated that if plaintiff did not agree she would not get anything.

Plaintiff's witness, Mrs. Edgett, testified in behalf of plaintiff that she accompanied the parties to consult the attorneys, and that defendant told plaintiff that if she didn't agree to the settlement she would receive practically nothing. On cross-examination the witness testified that after the funeral defendant again brought up the subject of settling the matter; that plaintiff stated she did not feel like talking the matter over and wished to consult a lawyer, but defendant told her this was unnecessary.

Defendant's evidence was that she and her husband came to Tulsa and started making arrangements for Mrs. Maddaford's burial; she was surprised at the size of the estate, thought it was all to be hers and had been so advised by a lawyer in Detroit. The matter was discussed with lawyers in Tulsa and it was learned that nearly all the property was held in joint tenancy with right of survivorship; that they discussed a division

of the property and plaintiff stated she would not sign anything then, so defendant did not insist further.

The administrator of Samuel Maddaford's estate testified he had met both parties and plaintiff told him of defendant's proposal to settle the estate and discussed the matter with him and suggested this might be the best thing to do; and that he advised her to do this if it was what she wished; that plaintiff discussed the matter with him two or three times, and told him she had concluded a settlement would be best and that it was what she wanted to do. This conversation took place on February 15th at the Maddaford home while he was making an inventory.

Mr. G. E. Edgett, at whose home plaintiff stayed while in Tulsa, testified he recommended to plaintiff that it would be better for both parties to agree to settle the matter rather than to engage in litigation.

The attorney (John R. Woodard) testified he represented defendant; that at one of the earlier consultations the attorneys handling the probate of Samuel Maddaford's estate suggested there might be a conflict between the parties and that it might be better for them to attempt to work out a settlement. Thereafter this witness participated in the consultations and discussions involving the opening of the deceased's deposit box and other matters concerning the estate and discussed with defendant the matter of settlement.

He further testified that Mrs. Edgett called his office and advised him plaintiff desired to effect a settlement and wished him to prepare the contract. The same evening he called at the Edgett home with the contract settling the estate on a fifty-fifty basis. One copy was given plaintiff, one copy to Mr. Edgett and the witness retained a copy and the contract was read to plaintiff and discussed with her prior to her signing of the instrument.

The evidence establishes beyond doubt that at all times prior to defendant's departure from Tulsa plaintiff not only was disinclined to discuss the matter of settlement at all, but likewise announced on several occasions that she would not sign any agreement.

The basis of plaintiff's argument of lack of consideration for this contract is that all property owned by Samuel Maddaford and his wife as joint tenants passed to Nellie Maddaford upon his death. And, that under the will, upon his death all the property passed to Nellie Maddaford. Therefore plaintiff contends that since Nellie Maddaford died intestate, the plaintiff inherited everything upon her death and defendant therefore had no interest therein, so that any agreement by defendant not to sue to establish her rights in the estate was ineffective and of no force.

Plaintiff urges that defendant's threat to involve the estate in litigation was not consideration for the agreement made by the parties. Numerous decisions all holding to this effect are relied upon. These are typified by this court's decision in Hulan v. Truitt, 188 Okla. 296, 108 P. 2d 170, announcing the rule as follows:

"Forbearance to file and prosecute a claim against the estate of a deceased person, which claim is without merit or foundation in law or in equity, cannot constitute a consideration for the assumption of a debt by an heir of said deceased person for which he is not otherwise liable."

However, plaintiff recognizes the rule announced in syllabus 2 of Fenner et al. v. Sparks, 170 Okla. 556, 39 P. 2d 27, that:

"A doubtful or disputed claim honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated, with reasonable belief of the party asserting it, and concerning which an honest controversy may arise, is sufficient to constitute a good consideration for a contract of compromise and settlement, although it may subsequently develop that such claim was unfounded."

To the same effect see 5 R.C.L. 881;

15 C. J. S. § 11, declaring the general rule to this effect. Such rule is particularly applicable to family disputes and it is immaterial on which side the right ultimately proves to be, it being unnecessary that the parties settle the controversy as the law would have done. See Roxana Pet. Co. v. Goldrick, 113 Okla. 298, 242 P. 228; Young v. Stephenson, 82 Okla. 239, 200 P. 225, 24 A.L.R. 978. This is particularly applicable to family settlements. Fenner v. Sparks, supra.

Plaintiff contends the rule announced can have no application herein, inasmuch as all the property involved had become the sole property of Nellie Maddaford prior to her death. Upon this basis plaintiff insists that the general rule must be applied, to the effect that where a claim is unfounded, forbearance to sue cannot support sufficient consideration for the contract.

After examination of this record we are unable to conclude, as urged by plaintiff, that defendant only agreed to desist from the bringing of an entirely groundless claim in consideration of plaintiff entering into this contract of settlement. There was testimony that plaintiff had consulted an attorney in Detroit and had been advised the estate would be hers. At the time of her arrival in Tulsa she was of the opinion, openly expressed, that all the estate was hers. Thereafter, at the first conference with the attorneys representing the Samuel Maddaford estate, she learned that a question existed as to who would inherit the estate in view of the arrangements between Samuel Maddaford and Nellie Maddaford, and thereafter expressed her wish to compromise the matter. The will in question was not considered by the trial court as to who took thereunder, or to what extent. This will merits no discussion under the trial court's holding, other than to note in passing that the terms thereof were sufficient to substantiate defendant's belief as to her interest in the estate.

Under these circumstances defendant broached the subject of compromise to avoid dissipation of the estate. The subject was mentioned numerous times, and just as often plaintiff declared her disinclination to discuss the matter. Then, after defendant's departure, plaintiff discussed the matter with third parties and independently concluded that a settlement would be advantageous to her own interests. We conclude that, under the rule announced in Fenner v. Sparks, supra, sufficient consideration existed upon which to base the contract plaintiff entered into with defendant. Also, see First Nat. Bank of Calumet v. Rodgers, 130 Okla. 146, 265 P. 1049, wherein the principle of the rule announced was recognized.

The next contention to be considered is that the contract in question was procured by fraud, duress and undue influence. Actual fraud is alleged in that plaintiff was an aged lady in failing health and suffering from grief; that upon arrival defendant immediately told plaintiff she had consulted a lawyer and knew she, defendant, owned the entire estate, which defendant knew to be untrue. Further, defendant positively declared she would take half of the estate, when this was not warranted by her information, and that all of this was done to deceive plaintiff. Constructive fraud is alleged in that defendant induced execution of this contract by threatening to dissipate the estate in litigation if plaintiff refused to settle the matter.

Plaintiff insists that under our statutory definitions of fraud, both actual and constructive, 15 O. S. 1941 §§ 58 and 59, defendant was guilty of actual fraud in procurement of this contract. And, that since defendant purported to advise with plaintiff concerning the estate, it became defendant's duty (both in her own actions and through her attorney) to deal fairly with plaintiff without any detriment arising to plaintiff therefrom.

The claim of undue influence is predicated upon the argument that plaintiff was old and enfeebled, and defendant intimidated plaintiff by telling her defendant owned all the estate; by telling

214

plaintiff that if she didn't agree to an equal division defendant would dissipate the entire estate by litigation; that during all this course of conduct defendant prevented plaintiff from having competent advice, while offering plaintiff her own and her attorney's advice, all calculated to force plaintiff to sign this contract.

This argument is unfounded in view of the fact that plaintiff steadfastly refused to sign anything or even discuss the matter of settlement before defendant left the city. Plaintiff then discussed the question of settlement independently with third parties who, to say the least, were favorable to her. After advising with them she requested that a contract of settlement be drawn up for her signature. Her conduct alone, without consideration of other factors, is sufficient to sustain the trial court's findings.

This being an equity case, we have carefully reviewed the entire record and find the judgment wholly sustained by the evidence.

In such cases the judgment entered will not be disturbed on appeal unless clearly against the weight of the evidence. Dungey v. Dowdy, 195 Okla. 361, 159 P. 2d 231; Martin v. Bodovitz, 194 Okla. 614, 153 P. 2d 825; McCrory v. Evans, 192 Okla. 649, 138 P. 2d 823.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and OSBORN, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.