**FIRST NATIONAL BANK OF POTEAU v. ALLEN et al.**

No. 10970—Opinion Filed Jan. 30, 1923.

(Syllabus)

**1. Bills and Notes—Holder in Due Course.**

Under the Negotiable Instruments Law (section 4102, Rev. Laws Okla. 1910), the payee in a promissory note cannot be a holder in due course.

**2. Same—Absence of Consideration.**

By the provisions of the Negotiable Instruments Law (section 4078, Rev. Laws Okla. 1910), absence or failure of considera-tion is matter of defense as against any party not a holder in due course

**3. Same.**

When the maker of a note receives no consideration, the payee suffers no detriment, and the note is given to cover up shortage of the cashier of the payee bank, and the cashier is not released in any wise from any part of his debt due the bank by reason of his having misappropriated its funds, the note is merely collateral.

**4. Same.**

If a third party, without any consideration personal to himself, gives his promissory note to a creditor as collateral to a mere naked debt of another, without any circumstance of advantage to the debtor or disadvantage to the creditor, the note is without consideration. ✓

**5. Same—Burden of Proof.**

Where the maker of a promissory note defends a suit thereon upon the ground that it was executed without consideration or for a consideration that would render the note void under the statute, the burden of proof is upon him to show that the note was without consideration, or that it was given for a consideration prohibited by the statute, and when the trial court finds that the defendant has sustained the burden and the finding is reasonably supported by the evidence, the judgment will be affirmed.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action on promissory note brought by First National Bank of Poteau against Kate and Andy Allen. Judgment for defendants, and plaintiff brings error. Affirmed.

T. T. Varner, for plaintiff in error.

Blanton & Osborne and J. S. Garrison, for defendants in error.

BRANSON, J. On April 8, 1916, the defendants in error executed their promissory note sued on herein to the First National Bank of Poteau, Oklahoma, in the sum of $5,000, due and payable October 8, 1916, and in default of payment of said note, the plaintiff in error, referred to herein as the plaintiff, brought a suit on January 6, 1918, in the district court of Garvin county, Oklahoma, that being the county of the residence of the defendants in error, Kate Allen and Andy Allen, her husband, herein referred to as defendants, and said cause having been tried to the court without a jury, judgment was entered in favor of the defendants, from which the plaintiff prosecutes this appeal.

Tom Wall, of Poteau, Okla., who had up to April, 1916, been cashier of the plaintiff bank, and defaulted in a large sum, was a

brother of the defendant Kate Allen. On discovery of the shortage, the National Bank Examiner, the directors and officers of the plaintiff bank, held a conference with the said Tom Wall, in which the said Wall agreed that he would secure if possible notes from certain of his relatives in favor of the plaintiff bank to cover a part of the shortage. That among the notes secured from relatives who lived near was one from Dan W. Patton, a brother-in-law to Tom Wall. The defendants lived in Garvin county, some 200 miles from Poteau, and with the knowledge of the plaintiff bank, the said Dan Patton on April 8, 1916, and only about three days after he had executed his note to the plaintiff bank, went to the home of the defendants, and there stated to the defendants, in substance, that Tom Wall would be prosecuted for violation of the national banking law, unless the shortage was made good, and if the defendants would execute the note in question, payable to the plaintiff bank, said prosecution could and would be forestalled. The said defendants did not owe the plaintiff bank anything, neither did they owe the said Dan W. Patton any sum, and the trial court found that said note was given without consideration, and that the purpose and object of executing the note by the defendants was to prevent the criminal prosecution of the said Tom Wall for embezzling the funds of the plaintiff bank, and the bank knew that said Tom Wall was securing notes from his relatives to cover up the shortage in the plaintiff bank, and that the said Dan W. Patton, at the time he induced the defendants, Kate Allen and Andy Allen, to sign the note in controversy, was the agent of the plaintiff bank, and that the bank was chargeable with the statements made to said defendants in order to get their signatures to the note.

The plaintiff contends that, while there was no consideration paid to the defendants by the plaintiff bank, and concedes that the defendants owed the plaintiff bank no sum of money, still plaintiff in error says that at the time the note was executed by the defendants and delivered to it, it then owned as part of the assets of the bank, a note of a similar amount executed by Dan W. Patton, and that on the delivery of the defendants' note by the said Dan W. Patton, that the bank surrendered the Patton note, and that it thereby became a holder in due course for value, and that the defense pleaded by the defendants cannot avail them.

The note in question was executed at Purdy, Garvin county, Oklahoma. None of the officers of the bank were present, and the conversation which led up to the execution of the note was had solely between the defendants and their brother-in-law, Dan W. Patton.

The deposition of the said Dan W. Patton was taken and offered in evidence by the plaintiff, and among other questions asked by the plaintiff and answers given by the defendant, were the following:

"Q. I will ask you if you know the purpose for which the note which you took from Kate Allen and Andy Allen to the bank was issued? A. Yes, I know the purpose. Q. I will ask you if this note was taken for the purpose of securing the shortage in Wall's account to the First National Bank of Poteau, Oklahoma? A. It was."

The defendants contend that at the time Dan W. Patton put his note in the bank, immediately after the shortage was discovered, it was understood between the officers of the bank and the said Patton that his note would be withdrawn as soon as the note from the defendants was secured, and that the defendants' notes would be taken in lieu of the note of Dan W. Patton. The record as to this contention is not clear, but it does appear that the bank was fully aware of the fact that the Dan W. Patton note and other notes secured from the relatives of the said Wall, including the note of defendants herein, were being executed by the relatives of the said Tom Wall to cover at least a part of his shortage. If the Allen note was to cover a part of the Wall shortage, as testified to by plaintiff's witness. Patton, it must have been that part which the Patton note undertook to cover for only a few days, and until the Allen note could be secured. The officers and directors of the bank must have understood when the Patton note was taken that it was merely until the Allen note could be secured; for when the Allen note was presented the acting cashier alone was present, and his testimony shows that he immediately accepted the Allen note and delivered the Patton note to Patton himself. By such a substitution of notes, in pursuance of an understanding at the time the first note was received by the bank, the bank would merely be carrying out its contract to accept the Allen note, and would not be suffering any detriment it was not already bound to suffer in delivering the Patton note.

The trial court concluded that "As a matter of law, the consideration of the note in controversy was against public policy, and void; * * * that there was not any consideration for which the defendants exe-

cuted the note in controversy." The evidence clearly shows that the defendants received nothing in return for their note which the law would consider a good or a valuable consideration, but that the sole purpose and object of it was to prevent the criminal prosecution of Kate Allen's brother.

The finding of fact by the trial court that Dan W. Patton was the agent and representative of the bank in securing the note sued on, and that it was secured under representations that it would prevent the prosecution of Tom Wall, brother of Kate Wall, would operate to affirm the judgment of the lower court, and the purpose of said note being against public policy, the note was void. Plaintiff, however, seriously contends that it did not participate through its officers in making such representations, and that there is no evidence reasonably supporting the finding of the court that the said Dan W. Patton was in any sense the agent of the plaintiff bank. We are doubtful whether the record sustains the finding that Patton was the bank's agent, but it does not follow that the judgment should be reversed. |Riddle v. Hudson, 68 Okla. 172, 172 Pac. 921.

Section 926, Rev. Laws Okla. 1910:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

In 1 Mod. Am. Law, page 428, Anson defines consideration to be:

"Something done, forborne or suffered or promised to be forborne or suffered by the promisee in respect of a promise. * * * The modern conception of the principles of consideration declares that the real test of a sufficient consideration is whether or not there is a detriment to the promisee, and that the presence of a benefit to the promisor is unnecessary."

In 66 Ruling Case Law, Contracts, section 67, pages 655 to 656, inclusive, it is said:

"Occasionally, it is stated expressly that a benefit to a promisor is sufficient consideration for a promise. The fact is, however, that the cases in which there is a benefit to the promisor invariably involve a detriment to the promisee. But the converse of this proposition is not true. There are many cases in which there is a detriment to the promisee, with no corresponding benefit to the promisor. Some

times the benefit is derived solely by a third person. Hence the consideration to support a promise need not involve a benefit to promisor."

Plaintiff could recover against the defendants without the defendants having received any benefit by reason of having executed the note, if the plaintiff had suffered any detriment or done anything not already required to be done by it. But where is the detriment suffered by the promisee? The promisee paid no money or other thing of value. The promisee released no claim it had against Tom Wall; it suffered no detriment unless it be, as it contends, that it is a holder, although the payee, of the note in question, in due course for value. If it be conceded that as a matter of law the payee in this note could be a holder in due course, and if it be conceded as a matter of fact that the bank parted with the Patton note, a thing of value, without obligation made concurrent with the execution of the Patton note to part with the same upon receipt of the Allen note, but that it parted with the Patton note and surrendered and marked the same paid as a purchase of the Allen note, then and in that event how can the plaintiff sustain its contention and recover as against the defendants?

The note taken from the said Kate Allen and the other notes taken from relatives of Tom Wall, for the purpose of "covering up" the Tom Wall shortage, were nothing more than collateral notes to the original indebtedness of Tom Wall to the bank, growing out of the fact that he had embezzled the bank's money. The bank did not release Tom Wall from any part of his indebtedness to the bank, and knew that all of these notes being taken from the relatives of the said Tom Wall were being taken without any consideration moving to the makers of the note; the bank suffering no detriment and Wall deriving no benefit.

In the case of Turle v. Sargent et al. (Minn.) 65 N. W. 349, the court said:

"If a third party without any consideration personal to himself gives his promissory note to a creditor as collateral to the mere naked debt of another, without any circumstances of advantage or disadvantage to the creditor, the note is without consideration." Bank v. Bell (Minn.) 21 N. W. 470; Rosemond v. Graham (Minn.) 56 N. W. 38; Bradt et al. v. Krank et al. (N Y.) 58 N. E. 657, 80 Atl. 741.

In the case of Paxson v. Nields, 137 Pa. 385, the court says:

"A note given by a widow in payment of a debt due by her husband, who is insol-

vent at the time of his death, without any new consideration to support it, is void, and the renewal of the note from time to time will not raise such consideration," Dickinson v. Hall (Mass.) 14 Pick. 217, 25 Am. Dec. 390; Evansville Nat. Bank v. Kaufman (N. Y.) 45 Am. Rep. 204; Stewart v. Jerome (Mich.) 15 Am. St. Rep. 252.

In the case of Ferrell v. Scott (S. C.) 42 Am. Dec. 371-2, the court in the syllabus, among other things, says:

"The consideration between the promisor and promisee is an absolute essential, and where the defendant derives no benefit and the plaintiff suffered no possible loss or detriment, the undertaking is without consideration, and must be regarded as nudum pactum between the parties thereto."

If, as the plaintiff contends, the Dan W. Patton note was surrendered to the maker on delivery to the plaintiff bank of the note sued on herein, it thereby paid Patton for the Allen note sued on: the conclusion reached and contended for by the plaintiff does not follow, even if plaintiff had not known that no consideration passed to the Allens.

Under section 4102, Rev. Laws Okla. 1910:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face:

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact:

"Third. That he took it in good faith and for value.:

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In the case of the Bank of Gresham v. Walsh (Ore.) 157 Pac. 534, the court in the syllabus says:

"In an action by a bank on a note, of which it was the original payee, given for the purchase price of stock. * * * a good defense was presented to the bank's suit; it not being a holder in due course, under L. O. L. par. 5885, defining who is a holder in due course, and absence or failure of consideration being a matter of defense against any person not a holder in due course by direct provision of section 5861." Builders Lime & Cement Co. v. Weimer (Iowa) 151 N. W. 100.

And after quoting Negotiable Instruments Law, which is identical with the above section of our statute, the court said:

"The plaintiff bank is the original payee named in the note sued on. It has never been indorsed or transferred. Plaintiff is not a holder thereof in due course, within the meaning of the statute. The note is subject to the defense stated in the answer," etc.

Under section 4078, Rev. Laws Okla. 1910:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise."

The absence or want of consideration was interposed by the defendants in this suit, and the finding of the trial court there was none is supported by the evidence. (Tinker v. Midland Valley Mercantile Co., 25 Okla. 160, 105 Pac. 333.)

The judgment of the lower court is affirmed.

JOHNSON, V. C. J., and McNEILL, KENNAMER, NICHOLSON, and HARRISON, JJ., concur.