**FIRST NAT. BANK of WESTVILLE v. RUSSELL et al.**

No. 17245.　Opinion Filed Dec. 20, 1927.

(Syllabus.)

**1. Judgment — Judgment Notwithstanding Verdict—When not Warranted.**

Where a party is not entitled to judgment on the pleadings, and the general verdict of the jury and special findings made by it are consistent and each adverse to such party, it is not entitled to judgment notwithstanding the verdict.

**2. Trial—Effect of Verdict in Equity Case— Adoption by Court.**

While it is the law that in a case of purely equitable cognizance, the verdict of the jury is only advisory to the court and may be rejected or adopted by it, yet in a case tried to a jury without objection by the defendant, where the jury has returned a general verdict and also made special findings on issues submitted to it, at the request of de-

fendant, which verdict and findings are each adverse to the defendant, and the court has entered an order refusing defendant's motion for judgment notwithstanding the verdict, and has also made an order overruling defendant's motion to set aside the verdict and grant a new trial, and thereupon entered judgment in accordance with the verdict and findings of the jury, held, that the trial court thereby adopted the verdict and findings of the jury as effectively as though it had entered an order explicitly to that effect.

**3. Bills and Notes—Chattel Mortgages—Invalidity Where Consideration for Compounding Prosecution.**

A note and mortgage, the consideration for which is the compounding of a criminal prosecution, is void as against public policy.

**4. Bills and Notes—Payee not Holder in Due Course—Lack of Consideration as Defense.**

Under the Negotiable Instruments Law of this state, the payee in a promissory note cannot be the holder in due course, and the absence of, or failure of, consideration is a defense to such note in the hands of the payee.

**5. Same—Note and Mortgage Given as Collateral to Debt of Another Without Advantage to Debtor or Detriment to Creditor.**

If third parties, without consideration personal to themselves, give their promissory note and mortgage to a creditor as collateral to the debt of another, without any circumstances of advantage to the debtor, or disadvantage to the creditor, the note and mortgage are without consideration, and the makers are entitled to have them canceled. Following First Nat. Bank of Poteau v. Allen, 88 Okla. 162, 212 Pac. 597.

Commissioners' Opinion, Division No. 1.

Error from District Court, Mayes County; A. C. Brewster, Judge.

Action by Berry A. Russell and wife, Grace Russell, against the First National Bank of Westville, Okla. Judgment for plaintiffs, and defendant appeals. Affirmed.

Neff & Neff, Harry G. Davis, Charles Wilson, and Thomas J. Wiley, for plaintiff in error.

Langley & Langley and Hall & Thompson, for defendants in error.

REID, C. One J. A. Rowland owed the First National Bank of Westville, Okla., here plaintiff in error, a balance of $1,164.41, on a settlement made December 17, 1921. D. W. Bushyhead became a surety to the bank on Rowland's note for this amount, and in order to indemnify Bushyhead, Rowland gave

him a chattel mortgage on some live stock, and also a third mortgage on 80 acres of land owned by Rowland situated in Adair county; the land being covered by two previous mortgages aggregating $2,400, payable to loan company, which loan, as agent of the company, Bushyhead had assisted Rowland in securing, and the proceeds of which had been paid to the bank at the time of said settlement. These mortgages given by Rowland to Bushyhead, though not formally assigned to the bank, were delivered to it by Bushyhead as security for Rowland's note.

On the 4th day of December, 1923, Rowland and his wife came to Watts, in Adair county, preparing to go to California by train, where they intended to make their future home. While at Watts, Rowland was arrested on a warrant issued out of the justice court at Westville, charging him with fraudulently disposing of some of the property covered by the chattel mortgage. He was taken to Westville and held in custody of a deputy sheriff, under the charge, until late the next afternoon. Berry A. Russell one of the plaintiffs in this case, who had married the daughter of Rowland, learning of Rowland's arrest on the night of December 4th, went to Westville early the next morning, where he discussed the situation with Rowland and with Bushyhead.

After this conference, and after Bushyhead had seen an officer of the bank, Russell and his wife executed to the bank their note for the amount due it by Rowland, and to secure the note, executed a mortgage on 80 acres of land situated in Mayes county, owned by Russell. At the same time Rowland and his wife made a deed to Berry Russell to the land they held in Adair county. Thereupon Rowland was released, and immediately proceeded on his way to California. This far the facts appear without dispute, and the controverted questions will be discussed hereafter.

On the 30th day of April, 1924, Berry A. Russell and his wife, Grace Russell, began this action against the bank, alleging in their petition that the mortgage given on the land in Mayes county was given for the reasons that the bank, then holding the indebtedness against Rowland, who was the father of Grace Russell, had caused his arrest on a charge of disposing of mortgaged property; that they were informed by the bank that Rowland would be released and the prosecution dismissed if they would execute the note and mortgage to secure his indebtedness: that acting under this duress they complied with the request, and the case was dis-

missed; that no other consideration entered into it, and it was executed solely because of the fear that Rowland would be convicted of a crime, and was entirely without consideration, and asked for cancellation of the note and mortgage. The defendant denied the allegations of the petition that it in any way had caused the arrest of Rowland, denied that it had any knowledge of the arrest, or that the execution and delivery of the mortgage by Russell and wife was for the release of Rowland from arrest, but further alleged that it was given for the consideration and for the indebtedness of Rowland, and in order to secure the release of the two mortgages given by Rowland to Bushyhead, and then held by it, which, with its note and said security it surrendered upon the execution and delivery of the note and mortgage by Russell and wife. The bank, by cross-petition, asked judgment on the note given by Russell and wife, and also for foreclosure of the mortgage sought to be canceled by the plaintiffs.

The case was tried to a jury, which made a general finding for the plaintiffs for cancellation of the note and mortgage, and a finding adverse to defendant on three special interrogatories submitted at its request.

The defendant moved for judgment non obstante veredicto, which was overruled, and for a new trial, with like result, and now brings the case here for review.

Section 553, C. O. S. 1921, provides:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter and the court may give judgment accordingly."

The special findings were in accordance with the general verdict, each adverse to the defendant, and the defendant not being entitled to a judgment on the pleadings, the court did not err in refusing defendant's motion for a judgment, notwithstanding the verdict. Hanna v. Gregg, 92 Okla. 34, 217 Pac. 434; Stapleton Motor Sales Co. v. Oates, 109 Okla. 173, 235 Pac. 513.

The defendant next insists that the trial court erred in submitting the case to the jury for a general finding, and did not itself weigh the evidence and make a finding.

Without objection by the defendant, the case was tried to a jury, and the court gave to the jury a full and complete general charge upon all the issues made by the pleadings and testimony, and upon which was returned a general verdict finding for the plaintiffs, and that they were entitled to cancellation of the note and mortgage involved in the action. And, as heretofore stated, the jury also found adversely to defendant upon three special material issues submitted at the request of defendant.

The defendant moved for judgment notwithstanding the verdict, which was refused. The defendant then filed a motion asking the court to set the verdict aside and grant a new trial, for the reason, among others, that the court erred in submitting equity questions to the jury, and in permitting the jury to return a general verdict. This motion was also overruled, and the court then entered its decree canceling the note and mortgage.

In the case of Stanley v. Stanley, 146 Ill. App. 109, the losing party moved the court to set aside the verdict and grant a new trial. The court overruled the motion without any finding of the facts, and entered judgment, as was done by the court in this case. That action of the trial court was assigned as error on appeal, and the appellate court said:

"Appellant insists that the decree is erroneous in that it fails to show that the chancellor approved the finding of the jury. Upon this contention we hold that the language employed in the decree, overruling the motion to set aside the verdict and to grant a new trial and dismissing the bill, was in substance an adoption by the court of the verdict of the jury as its findings and as effective as though the court had in express terms found that appellant had failed to prove the charge made in her bill and upon such finding had dismissed the cause."

The action of the trial court in refusing the motions and entering judgment for the plaintiffs in accordance with the general verdict and findings of the jury was, in effect, to find every fact necessarily found by the jury in returning the general verdict as well as the special findings, and was a sufficient adoption by the court of the verdict and findings of the jury.

It must be borne in mind that the note and mortgage were made direct to the defendant. Therefore, the defendant was not a holder in due course, within the meaning of the Negotiable Instruments Act of this state. First National Bank of Poteau v. Allen, 88 Okla. 162, 212 Pac. 597.

There was abundant evidence to sustain the jury in finding, as an element of the general verdict, that the note and mortgage were given by the plaintiffs to secure the release of Rowland from prosecution in a criminal case. The consideration was unlawful, and they are therefore void. Sections 1675

and 5021, C. O. S. 1921; Stanard v. Sampson, 23 Okla. 13, 99 Pac. 796; Calloway v. Western States Lumber Co., 32 Okla. 680, 123 Pac. 151; First Nat. Bank of Poteau v. Allen, supra.

For this reason the note and mortgage were without valid consideration, and it is therefore unnecessary for us to determine whether the relation between Berry A. Russell and Rowland is such as to authorize the plaintiffs to avoid the note and mortgage on account of duress.

It is also unnecessary for us to say whether the evidence is sufficient to show Bushyhead caused the arrest of Rowland at the instance of the defendant, as contended by the plaintiff and as found by the jury, in reply to a special interrogatory. The note being payable to the defendant, and the jury being authorized to find from the evidence that the note and mortgage were given for a consideration which rendered them void, the plaintiffs were entitled to cancellation if the defendant had notice of the illegal consideration at the time it accepted the paper, regardless of whether it originally caused the arrest; or, if it had no such notice at the time it took the note and mortgage, yet parted with no consideration before such notice came to it, then plaintiffs were entitled to have the paper canceled as being without consideration on that account.

The jury was authorized to include in its general verdict the finding that the defendant had notice of the consideration for which the Russells' paper was given at the time it was delivered to it. Rowland was arrested on the afternoon of December 4th, and carried to the town of Westville, where the bank is situated, and was released by the officers late in the afternoon of December 5th. Before the paper was accepted by Bushyhead, he went to see the officers of the defendant and obtained their consent to its acceptance. When asked on cross-examination whether he told any of the bank officers that Rowland was under arrest, Bushyhead answered, "I don't recall that I did," and further said that he did not know whether they knew of Rowland's arrest. While the bank cashier testified that he did not learn of the arrest until after the business was wound up, yet he did learn it probably on the same day, and when asked if he learned it before he surrendered any of the previous security which he had, he replied, "I don't recall." The entire evidence submitted upon this question, together with the reasonable inference to be drawn therefrom, au-

thorized the jury to conclude that the bank had notice of the consideration for which the paper was given at the time it was taken.

However, it does not necessarily follow that the plaintiffs could not recover though the defendant never heard of Rowland's arrest.

Returning to the other suggested consideration for the note and mortgage, we find that section 5019, C. O. S. 1921, provides as follows:

"Any benefit conferred, or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Let us see if the defendant suffered any prejudice which became, under the foregoing statute, a sufficient consideration for the note and mortgage, and thereby prevents their cancellation.

The defendant had the $1,169.21 note executed by Rowland, together with the chattel and realty mortgages securing it. None of these securities were delivered to Rowland or to Russell on the day the Russell paper was executed, as is the usual custom when new paper is substituted for old. The cashier testified that he thought the note and realty mortgage were delivered to Bushyhead, but that he could not be positive. He did testify, affirmatively, that the defendant continued to hold the Rowland chattel mortgage; and this was entirely inconsistent with the claim that Rowland's note had been discharged by execution and delivery of the Russell paper. Bushyhead testified that he might have gotten the Rowland note, but did not think so. On March 18, 1924, Bushyhead wrote Russell, at the instance of defendant, that the defendant was insisting that the property covered by the Rowland chattel mortgage he sold and placed on the indebtedness, and also suggesting that Russell buy the place which had been deeded to him by Rowland. Russell claimed he only held this place in order to make a quick sale for Rowland. The suggestions in this letter are entirely inconsistent with the claim that the defendant surrendered Rowland's note and security and accepted the Russell paper in lieu thereof. The Russell note was not due, and the defendant had no right to insist, at that time, that anything be paid on it. And there was

128—8

no reason or authority for the defendant to ask anybody to sell the property covered by the Rowland chattel mortgage if Rowland's debt had been released by it when the Russell paper was delivered to it. It is further shown that the realty mortgage was not released by Bushyhead until five days after this suit was filed. The evidence in the case was such as to authorize the jury to find that the defendant only took the note and mortgage of the Russells as additional security for the indebtedness of Rowland, and to include in the general verdict the finding that there was no consideration on that account, and that plaintiffs were entitled to have the note and mortgage canceled.

The evidence is sufficient to sustain the verdict and judgment, and the judgment of the trial court should be affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.