## STATE ex rel. SHULL, State Bank Com'r, v. BANTA.

No. 20477. Opinion Filed April 14, 1931.

Rehearing Denied May 5, 1931.

John L. Boland and J. H. Linebaugh, for plaintiff in error.

Ralls & Ralls and Hill & Banta, for defendant in error.

McNEILL, J. This is an appeal from a judgment rendered by the district court of Atoka county, state of Oklahoma. The state of Oklahoma ex rel. O. B. Mothersead, State Bank Commissioner, plaintiff, instituted suit in said court on the 2nd day of February, 1927, against Ira J. Banta, Jesse W. Phillips, and Lilly M. Phillips, defendants. Thereafter, on the 22nd day of November, 1927, the name of C. G. Shull was substituted for

that of O. B. Mothersead. Judgment was rendered thereon, on the 15th day of March, 1929, in favor of the defendants, and the plaintiff appeals. The parties will be referred to as they appeared in the trial court.

Plaintiff alleges, in substance, that the Oklahoma State Bank was conducting a general banking business at Atoka, Atoka county, Okla., and became and was insolvent and was taken charge of by plaintiff, as Bank Commissioner, for the liquidation of its affairs on or about the 27th of October, 1926; that on the 14th day of December, 1925, the defendants Jesse W. Phillips and Ira J. Banta were indebted to the Oklahoma State Bank in the sum of $2,000; that on said date said defendants made, executed, and delivered to said bank their promissory note in the sum of $2,000 with interest and attorney fees; that said note was in renewal of a prior note executed to said Oklahoma State Bank by the said Ira J. Banta and the said Jesse W. Phillips to secure payment of said indebtedness evidenced by said note. The said defendant Jesse W. Phillips and wife, Lilly M. Phillips, on the 31st day of May, 1923, made, executed, and delivered to said bank an instrument in writing, being a warranty deed in form, conveying to said bank 40 acres of land situated in said county; that while said instrument was in form a warranty deed, it was given to said bank as security for the indebtedness due said bank by said defendants Jesse W. Phillips and Ira J. Banta, and that it was agreed and understood the same should be given and accepted as security for the payment of said indebtedness and the lien thereby given to be subject to foreclosure in the event the indebtedness due said bank by the said Jesse W. Phillips and Ira J. Banta was not paid. A copy of the deed was attached to plaintiff's petition which shows that the same was not filed for record until the 27th day of April, 1925. Plaintiff prays for judgment in the sum of $2,000 with interest and attorney fees against Jesse W. Phillips and Ira J. Banta and for judgment declaring said warranty deed to be a mortgage to secure the payment of said indebtedness evidenced by said note sued on herein and for a foreclosure of said lien and a sale of said mortgaged premises.

To this petition of the plaintiff, after preliminary pleadings and motions, the defendant Ira J. Banta filed his answer in which said defendant admits signing the promissory note sued upon, but denies delivery thereof, and alleges that said note was tentatively delivered to the said Oklahoma State Bank and was not to become an absolute delivery until signed by Jesse W. Phillips and secured by good and sufficient real estate mortgage to be furnished by the said Phillips; that the conditions upon which said notes were delivered were never fulfilled; that said note was never signed by the said J. W. Phillips and that the said J. W. Phillips did not make or furnish a real estate mortgage to secure the payment of said note.

As a further defense, said defendant Banta alleges that there is a total failure of consideration for the execution of the note sued upon; that the defendant was not indebted to the bank in any sum; that said bank did not pay or offer to pay defendant Banta any sum whatsoever; that said bank did not part with anything of value, suffered no detriment, and that defendant Banta did not receive anything of value; that if there was any indebtedness due, it was the indebtedness of the said J. W. Phillips and that said defendant was not liable therefor; and that said indebtedness had been fully paid by the said J. W. Phillips. A reply was filed to said answer denying all the material allegations of affirmative nature therein contained. The matter was tried to the court without a jury, judgment rendered for defendants. Motion for new trial was filed, overruled, and the matter comes regularly before this court to reverse the action of the trial court.

The assignments of error complained of consist of the error of the court in overruling plaintiff's demurrer to defendant's evidence, admitting incompetent evidence offered by the defendant, and excluding evidence offered by the plaintiff; and error of the court in rendering judgment for the defendants.

Plaintiff contends that there was a good and valuable consideration for the execution of the first note in 1923. This was a note given in payment of two notes by Mr. W. W. Rogers for the sum of $800 and $900 and the sum of $50 as interest. These two notes appear on the teller's cash journal of said bank as follows:

Teller's Cash and Journal

| Date Feb. 5, —1923 | | | Date Feb. 5, —1923 | |
|---|---|---|---|---|
| Notes Collected | | | Notes Discounted | |
| No. | | | No. 25001 Ira J. Banta | $1759.90 |
| 19802 W. W. Rogers | $800.00 | | | |
| 20727 W. W. Rogers | $900.00 | | | |
| No. | Interest | | | |
| Banta | 50.00 | | | |

The plaintiff contends that the payment of these notes and the extension from time to time of the payment of the several renewal notes was a good and sufficient con-

sideration in law for the execution of the note on which this suit is based.

It appears from the record that Phillips was a director in the bank, and was indebted to the bank at the time Mr. Banta signed the note. The note which Banta signed represented a part of his indebtedness in the bank. His testimony in part is as follows:

"Q. State whether or not, if you know, this $2,000 note, or whatever it was Mr. Banta signed, represented a part of your indebtedness to the bank? A. It did. Q. Why, Mr. Phillips, if you know, was it that this note was taken to evidence a part of your indebtedness? A. Because of the ruling from the Bank Commissioner that a director could not owe the bank over a certain amount. Q. Over a certain per cent. of the capital stock? A. Yes, sir. * * * Q. Did you have a conversation with him about this matter? A. Hudspeth is the fellow that called me in there and told me that we would have to do something immediately with what I owed the bank. Q. Hudspeth was? A. He was the vice-president and acting cashier. Q. At the time he called you in and told you that would have to be done, you owed the bank about how much? A. About $10,000. Q. And you, according to his suggestion, had to reduce it— A. To eight. Q. To eight thousand? A. Yes, sir. Q. How did it happen, if you know, that Mr. Banta was brought into this? A. He suggested my getting Banta to make a note for two thousand dollars. Q. Was that done? A. Yes, sir. Q. Mr. Phillips, you received nothing from the bank on this? A. No, sir. Q. Except what you already owed the bank? A. No, sir. Q. And Mr. Banta received nothing? A. He did not. Q. Then, the indebtedness was, in fact, your indebtedness to the bank? A. It was. Q. Did you pay the interest on it? A. Yes, sir. I did, up to '25. Q. Then what happened, if anything, in regard to this indebtedness? A. The bank had a deed to a piece of land I had bought, and they taken it over for the indebtedness. Q. With whom did you have that transaction? A. Hudspeth. Q. Jim Hudspeth? A. Yes, sir. Q. You executed a deed to the bank in satisfaction of this indebtedness? A. I did. Q. How much land was there in—I believe they said it would be— * * *"

On cross-examination, Mr. Phillips testified as follows:

"Q. At that time you procured Mr. Banta to execute a note for the sum of $2,000 in order to reduce your loans? A. Yes, sir. Q. You knew, as a director, that that was going into the assets of the bank? A. I knew it was done because the bank was in hard shape, as far as that is concerned, something to that effect. Q. Did you, as a director of that bank, intend to use that asset, $2,000 note of Ira Banta's, in the bank, and did you use it as such? A. It was used there.

Q. You were a managing officer of the bank, were you not? A. I was a director in the bank. * * * Q. And as such director, you knew that that note went into the assets of the Oklahoma State Bank? A. Well, I didn't know where it went. Q. And it was put in there for the purpose of being used as an asset and was such and represented as such to the Banking Department? A. I expect it was. * * * Q. I will ask you if you don't know that these two notes, one for $800 and one for $900, signed by a man named Rogers, were first executed for the consideration of $1,700 for Ira J. Banta? A. That was for the first note; yes, sir. Q. It did go for liquidating and paying the two Rogers notes? A. No, sir; they were my notes; I had assumed them."

Defendant Ira J. Banta testified as follows:

"Q. And how did you happen to sign the note? A. At the request of Mr. Phillips and Mr. Hudspeth. Q. And now how did you happen to sign the first note you spoke about? A. I signed it because Mr. Phillips came to me and said that he owed more at the bank than the bank would allow him to carry while he was a director, and said that he and Mr. Hudspeth wanted me to make a note for a part of Jesse's indebtedness. Q. And did you do that? A. I did. * * * Q. Now, then, that was afterwards renewed, was it? A. Yes, sir; I don't know how many times I renewed the note. * * * A. And I finally told them that I would sign the renewal note, if he would get Mr. Phillips to secure it and sign with me. Q. What did he say? A. He said that he would, and on that understanding, I signed the note and went back home. * * * Q. I will ask you if in 1923, you didn't execute the first note on this loan, of which this is a part—the renewal—for $1,750? A. I don't remember the exact amount, but it was approximately $1,700. Q. At that time, Mr. Banta, you knew, as a matter of fact, you were doing it to accommodate Jesse Phillips? A. And the bank. Q. You knew that he was a director in the bank? A. Yes, sir. Q. And you knew that the bank was going to use that as one of its assets? A. I presumed so; yes, sir. Q. And Phillips told you that in order to get by the Banking Department, he would have to reduce his loan and use your credit for part of his loan? A. Yes, sir. Q. And that note was executed by you and Phillips? Is that right, or did Phillips sign the first note? A. No, sir; I don't think Mr. Phillips signed that note. * * * Q. As a matter of fact, don't you know that the two notes that were given, the Rogers notes, and signed by Rogers, and the mortgage on the house afterwards purchased by Mr. Phillips, were the original consideration for the last note you executed? A. I don't know. I have hearsay information of that happening, but I don't know it. Mr. Phillips told me it was to take up a debt that he then owed the Bank. Q. Now, this purported agreement or conversation had with Mr. Palo Roberts, was

had at what time? A. At the time of the making of the note that is sued on here. * * * Q. Then the first, original note which was given, of which this was a renewal, have you ever paid off? A. No, sir."

There is no controversy as to the fact that the bank was looking to Phillips for payment of an indebtedness in the sum of $10,000, represented by notes which Phillips had either signed or assumed before Banta signed the original note in the year 1923.

Palo Roberts, the president of the bank, testified as follows:

' Q. What year did the transaction arise in? A. 1923. Q. From your personal knowledge do you know what the consideration was for the execution of the first Ira J. Banta note? A. Yes, sir. Q. What was it? A. $1,750. Q. What, if anything, was canceled or given up by the Oklahoma State Bank for the $1,750 note? A. Two notes of W. W. Rogers, one for $800 and one for $900 and $50 in interest. Q. Now, after examining the data here, from your own independent recollection, do you know what became of the $1,750 note that was executed by Mr. Banta to take up the two larger notes? A. It was renewed in 1924. Q. Do you know what become of that renewal note? A. It was renewed in 1925. Q. Then, do you know what the consideration was for the execution of this note? A. Yes, sir; that was another renewal."

It seems fair to conclude that the consideration for the execution of the Banta note was the cancellation or release of certain indebtedness owing the bank by J. W. Phillips as evidenced by two notes held by the bank, being the two notes signed by W. W. Rogers, one for $800, one for $900, and interest amounting to $50, which notes Phillips states he had assumed and agreed to pay, and the extension of time for the payment thereof. Banta renewed his note in 1924, and again in 1925. By this transaction with Banta the indebtedness of Phillips, so far as the bank records were concerned, was reduced to show his liability as that of approximately $8,000, instead of $10,000. It is not controverted that the bank had parted with value to the amount of $10,000 prior to the time that Banta signed the note in 1923 in the sum of $1,750 and also that the bank records show that the indebtedness of said Phillips amounted to $10,000. There is only one logical inference to draw from this evidence, and that is, after Banta signed the original note in 1923 in the sum of $1,750 and delivered the same to the bank, these notes of W. W. Rogers, evidencing a pre-existing debt due to the bank, passed out of the note case of said bank and thereafter the Banta note was listed as assets, being in lieu of said Rogers notes, or

in effect, the notes of Rogers were exchanged or replaced by the Banta note. This court very properly held in the case of Security Nat. Bank of Tulsa v. Bohnefeld, infra, where there was an exchange of notes the same imported a consideration. In this same connection our court in the case of First Nat. Bank v. Rogers, 130 Okla. 146, 265 Pac. 1049, states as follows:

"We think it is well settled that it is not necessary to the consideration of a note that the maker thereof be benefited. It is sufficient if a benefit were conferred upon a third person or a detriment were suffered by the promisee at the instance of the promisor."

To the same effect is the case of Barrett v. Mahnken (Wyo.) 48 Pac. 202, in which the court states:

"It is also urged that the makers of the note received no consideration therefor. It is not necessary that any benefit should be received by them as a consideration. A valid consideration for a note may consist of an injury to the payee as well as of a benefit to the maker, or the consideration may be a benefit to a third person."

The Supreme Court of California in the case of Humboldt Savings & Loan Soc. v. Dowd, 137 Cal. 408, 70 Pac. 274, states:

"The taking of the new note, payable at a future day, imposed upon the payee the duty of waiting until the maturity of the new note. * * * We regard the circumstances that the old note was not delivered up and the old mortgage canceled of record as immaterial. It does not appear that they are outstanding, and plaintiff is not seeking to recover upon them. If defendants had discharged the indebtedness on the renewal note, there would have been no trouble."

The defendant Banta contends that the note is an accommodation note and that he received no benefit from the transaction by reason of the execution of said note, and that the bank did not part with anything.

In the case of Neylon v. Liberty Nat. Bank of Pawhuska, 126 Okla. 188, 259 Pac. 545, in which the Liberty National Bank brought suit against Neylon as defendant to recover upon a promissory note, and wherein the defendant answered admitting the execution of the note, and alleged that he was not liable thereon because it was executed without consideration and for accommodation by the plaintiff, and for the further reason that the cashier of the plaintiff bank had agreed that the defendant was not to be held liable thereon, the court, in syllabus 1 and 3, states as follows:

'1. Where a benefit is conferred on a third party and a detriment is suffered by

the payee of a note at the instance of the maker thereof, it will be sufficient 'consideration' to support the note, even though the maker thereof received no personal benefit by reason of the execution and delivery thereof."

'3. The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank, to which it was payable, to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that, having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank, he ought not to be permitted to deny it that effect."

In the body of the opinion the court states:

"The fact that the defendant, as maker of the note, received no benefit from the transaction did not constitute a defense. The loan made by the bank to Frank and Mary Simpkins was sufficient consideration. Doxy v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150. See, also, Wright v. McKitrick, 2 Kan. App. 508, 43 Pac. 977; 6 Cyc. 690; 8 Corpus Juris, 214. In Doxy v. Exchange Bank of Perry, supra, the court said:

" 'The real test is: Did the payee part with value or waive a legal right by reason of the execution and delivery of the note? If he did, it is a sufficient consideration to authorize a recovery for the amount due thereon.'

"Although the defendant testified that he was not to be bound by said note, but executed it for the accommodation of the plaintiff bank, the facts set out disclose that, in legal contemplation, Frank and Mary Simpkins were the parties accommodated.

"The rule as stated in 8 Corpus Juris, 254, is as follows:

" 'The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact. And the fact that one derives some incidental benefit from the paper will not make it accommodation paper as to him.'

"The foregoing text cites the case of Thom v. Kibbee, 62 N. J. Law, 753, 42 A. 729, where the court said:

" 'The accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned, not a third person who may receive an advantage by the loan of the credit.'

"In our opinion, the credit of the defendant herein was loaned not to the plaintiff bank, but to the Simpkins; the effect of the transaction being to enable them to borrow upon the credit of the defendant after the credit which the bank, under the law, could extend them had been exhausted. * * *

"To permit the contractual relations of the parties to be controlled by such agreement would be to countenance and give effect to a secret arrangement entered into for the purpose of evading said law. The public is greatly interested in the management, control, and regulation of the banking business; banks are permitted to do business through the courtesy and permission of law and subject to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for the purpose of examination but less favorable for the purpose of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant had assumed was, in fact, not an obligation."

So, in the case at bar, it is our opinion that the credit of the defendant Banta was loaned to his codefendant Phillips and not to the Oklahoma State Bank, the effect of the transaction being to enable Phillips to reduce his indebtedness with the bank upon the strength of the credit of the defendant Banta, which indebtedness the bank under the law was required to have said Phillips reduce, and which was done after the Banta note was executed and delivered to the bank.

Section 7694, C. O. S. 1921, provides:

"Presumption of Consideration. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Section 7695:

"Value Defined. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

Section 7699:

"An accommodation party is one who has signed an instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value,

notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Section 5019:

"Good Consideration Defined. Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

In this case the burden of proof as to all affirmative defenses was upon the defendant. The note in question, in accordance with section 7694, supra, "is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." In the case of Farmers & Miners State Bank v. Probst (Mont.) 263 Pac. 697, the court in considering the consideration which was involved in a note in that case and wherein the burden was placed on the party seeking to invalidate it to show want of consideration, and after quoting a section of the statute of Montana identical with section 5019, supra, states:

"The note sued on was a promise. It is seen a consideration may be a benefit to the promisor or a prejudice to the promisee.

"It may be that, for his note, no benefit was conferred on defendant, the promisor, although we do not concede it. Generally, granting a party what he wants is considered a benefit to him; if not a benefit, naturally he would not want it. Defendant wants to assume Alcanter's liability on the old note so Alcanter would not have to pay. The benefit may be a benefit to a third party. 8 C. J. 212, and cases cited; 13 C. J. 342, and cases cited."

The defendant Banta wanted to assist Phillips in reference to his liability to the bank, for the reason that the bank examiner was objecting to the excessive loan of Phillips, and to relieve Phillips from his liability to said bank, at least, to the amount of the note signed by Banta. The defendant Banta contends that he signed the original note in favor of the bank for the accommodation of Phillips and the bank, and that he "presumed" the bank was going to use his note as one of its assets. The defendant Banta also testified that he received no consideration for the signing of said note; that he signed the note because Phillips stated that he owed more than the bank allowed him to carry while he was a director and that Phillips and Hudspeth wanted him to make a note for a part of Phillip's indebtedness.

With that understanding, he executed the original note and consented to several renewals thereof.

In this same connection Phillips testified that Hudspeth suggested getting Banta to make a note for $2,000; that his indebtedness to the bank must be reduced from $10,-000 to $8,000. As a result, the Banta note was secured. Phillips states that he received nothing from the bank by reason of this Banta note, except what he already owed the bank; that Banta received nothing and that the indebtedness was in fact Phillips' indebtedness to the bank. These statements of Phillips are the announcements only of conclusions. The record does not support this contention. Surely, under our statute, a benefit was being conferred upon him. Phillips was lawfully bound to pay his obligations to said bank represented by note, or notes, in the amount of $10,000. Banta knew of this obligation to the bank when he signed the original note in the sum of $1,750, and he knew when he signed the note and delivered the same to the bank that the same was to be used in the note case of the bank to be listed as assets of the bank. The record does not reveal that Phillips at any time promised the defendant Banta that his note would ever be redelivered to Banta or withdrawn from the assets of the bank. There is the positive understanding between these parties that the bank examiner would not tolerate or permit the bank to continue to hold as its assets, paper of Phillips, a director of that bank, in the sum of $10,000.

It was the plain duty of the bank, without the suggestion of the bank examiner, to keep its banking institution in accordance with the laws of this state and to replace excessive loans with liquid assets, good, sufficient, and acceptable paper, or with actual deposits of money and credits in lieu thereof. It cannot be denied that one of the purposes of this transaction between Banta and Phillips was to accommodate Phillips in the removal of a portion of his excessive loan from the bank. This loan was excessive and it may or may not have been collectible. When the loan was reduced, and the loan of Banta substituted, it can hardly be urged that there was not a change of conditions in relation to the parties herein, to wit: The Oklahoma State Bank, Phillips, and Banta. Defendant Banta knew that this note which he renewed on several occasions was in the bank as an asset of this bank. He also knew as a matter of law that if this note was not listed as an asset by the bank, the bank of necessity might, in view of the excessive loan to said Phillips, be required to assess each

stockholder of said bank additional liability by reason of the impaired condition of the assets of said bank. When Banta delivered his note in the first instance there was a forbearance on the part of the bank to proceed in the enforcement of its loan against Phillips or Rogers. Each time the note was renewed there was a recognition of the pre-existent Rogers' indebtedness assumed by Phillips, and, by such renewal, there was a further forbearance on the part of the bank; for it is the duty of the bank to refrain from carrying past due paper, and if there is such, it is required to enforce collection of same.

In the case of Security Nat. Bank of Tulsa v. Bohnefeld, 131 Okla. 66, 267 Pac. 631, the court states as follows:

"The principal liabilities of a bank consist of money on deposit from its customers. The principal assets of a bank consist in the securities received through the investment of such deposits. Banks, by the acceptance of deposits from their customers, assume a trust relation that cannot be fraudulently and clandestinely bargained away by their officers. Every note that is executed and delivered to a bank for money loaned by it becomes a part of its assets, and every depositor has a right to rely upon such note as being a legal, binding, and valid obligation upon the maker thereof, and any secret or collusive agreement made between such maker and the officers of a bank, to the effect that such bank will not hold the maker thereof liable, is invalid, null, and void.

"We quote with approval certain language which is to be found in the case of Cedar State Bank v. Olson, 116 Kan. 320, 226 Pac. 995, wherein the Supreme Court of Kansas said:

" 'The banking business is fraught with public concern. Banks do business through permission of the law subject always to its provisions for the protection of depositors, creditors, and stockholders. Public faith, credit, and honesty in business transactions are a bank's main assets. Banks are subject to public regulation to the end that they make proper loans and freely contract debts with depositors and others, to achieve the ends of legitimate business. The statute requires careful examination by the Bank Commissioner periodically in order that those who deal with banks may not be misled by appearances. To sanction any arrangement, whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for purposes of examination, but less favorable for purposes of liability or enforcement. The defendant, having signed the note with full understanding of its purposes, cannot be relieved of liability. Considering the note as a part of the bank's assets, an understanding or agreement of nonliability, was neither proper nor tenable. It amounted to a fraud upon the depositors, stockholders, and the public to agree that the obligation which the defendant assumed was, in fact, not an obligation. It amounted to a fraud upon the depositors, creditors, and stockholders of the bank and a fraud upon the public because it gave assurance that the assets of the bank were sound. Having given the note with the avowed object of having it appear as an asset for purposes of examination, she is estopped from asserting a secret understanding that she was not to be held liable. The law will not countenance contracts that are against the public good, and, therefore, forbidden by public policy. * * *'

"The rule heretofore announced by this court that no agreement between the maker of a note and the officers of a bank that such maker would not be held liable for the payment of said note, is a most salutary rule of law, for if such were not the case, the stockholders, the depositors, and the public, as well as the bank examiners, would be deceived and misled as to the actual assets of such bank, and where the maker of a note under such conditions becomes a party to such deception, the law closes the avenue of escape to the maker of a note executed under such an agreement."

In the case of First Nat. Bank of Tulsa v. Boxley, 129 Okla. 159, 264 Pac. 184, the court states:

"The public is greatly interested in the management, control, and regulation of the banking business; banks are permitted to do business through the courtesy and permission of law and subject to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank favorable appearance for the purposes of examination, but less favorable for the purposes of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant assumed was, in fact, not an obligation. We must conclude that under the defendant's allegations the note sued on be-

:rt:��: vitamin

came a part of the assets of the bank, and the allegations of the agreement just considered did not constitute a defense of the plaintiff's cause of action.

"We are not unmindful of the cases which hold that a defense to a note is established by showing that it was given to a bank, which parted with nothing on the strength of it, merely to enable an officer to deceive the examiner, but the present case is distinguishable from those cases on the ground, already stated, that in the case at bar there was a consideration for the note.

"The correct rule seems to be that where there is no want of a valid consideration, and the note was not, in legal contemplation, given for the accommodation of the bank, the maker cannot defeat its payment by showing that with his knowledge it was intended to mislead the bank examiner as to the bank's condition and securities."

In the case of First Nat. Bank of Calumet v. Rodgers, 130 Okla. 146, 265 Pac. 1049, it is said:

"Section 5019 C. O. S. 1921, on 'Consideration,' provides as follows:

"'Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.'

"We think it is well settled that it is not necessary to the consideration of a note that the maker thereof be benefited. It is sufficient if a benefit were conferred upon a third person or a detriment were suffered by the promisee at the instance of the promisor. Doxy v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150; Fue v. Peoples Bank & Trust Co., 56 Okla. 738, 156 Pac. 683; Horany v. Treese, 91 Okla. 264, 217 Pac. 396.

"If the payee parted with value, or waived a legal right, by reason of the execution and delivery of the note, the same is supported by a consideration. Doxy v. Exchange Bank & Trust Co., supra; Sawyer v. Bahnsen, 102 Okla. 41, 226 Pac. 344.

"It is also a sufficient consideration if the payee of a note had grounds for litigation against the maker, or a third party, for an amount due to the said payee. Sawyer v. Bahnsen, supra. Also, Llano Improvement & Furnace Co. v. Pacific Imp. Co., 66 Fed. 526."

The state of Kansas in the case of Cedar State Bank v. Olson, reported 226 Pac. 995, in its syllabus states:

"An officer or director of a bank who gives his note to the bank to take the place of notes representing excess loans, and for the purpose of making the banking department believe it to be an asset of the bank, is estopped from asserting a secret understanding that he is not to be held liable."

Counsel for the defendants rely on the case of First Nat. Bank of Poteau v. Allen, 88 Okla. 162, 212 Pac. 597, wherein they cite the second and third paragraphs of the syllabus of said case, and urge that this case was reaffirmed in the case of First Nat. Bank of Westville v. Russell, 128 Okla. 222, 262 Pac. 205, wherein they quote the fourth paragraph of the syllabus:

"Under the Negotiable Instruments Law of this state, the payee in a promissory note cannot be the holder in due course, and the absence of, or failure of, consideration is a defense to such note in the hands of the payee."

The court in the case of First Nat. Bank of Calumet v. Rodgers, supra, in an analysis of this case, states:

"In the Allen Case, the cashier of the Poteau Bank embezzled money and in order to keep him from being prosecuted, his brother-in-law deposited a note payable to the bank in the sum of $5,000. A few days thereafter, his sister, Katie Allen, and his brother-in-law, Andy Allen, executed a note payable to the bank, which note, when delivered to the bank, was accepted in lieu of the note given by Patton, and Patton's note was delivered up to him. The court, in deciding that there was no consideration given for the Allen note, held that under all the circumstances, the bank knew that the notes of Allen were given in order to prevent the cashier from being prosecuted, and were given to cover up a shortage, and therefore in violation of public policy, and that by the execution and delivery of the Allen notes, although the Patton note was canceled, the bank did not part with anything of value, and there was no consideration for its execution, it being merely an accommodation note to the bank, the bank not releasing the cashier from any liability.

"Under the facts in the two cases, we think they are distinguishable. In the Allen Case, no consideration was given nor any detriment suffered by the bank. They simply gave up a note of Patton's which the court and jury found was pursuant to an original understanding at the time the Patton note was given."

Brannan's Negotiable Instruments Law (4th Ed.) on page 222, states that the Allen Case, supra, is difficult to reconcile with section 25; said section 25 being as follows:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt, constitutes value; and is

deemed such whether the instrument is payable on demand or at a future time"

—which section is the same as 7695, C. O. S. 1921, supra.

Complaint is also made in reference to the error of the trial court in excluding competent evidence. The plaintiff offered certain documentary evidence consisting of "Liability Ledger Sheet," and four "Teller's Cash Journals," dated February 5, 1923, March 26, 1924, April 16, 1925, and January 11, 1926, respectively, which exhibits show the various steps of the several transactions concerning the notes of defendant Ira J. Banta with the Oklahoma State Bank of Atoka from the execution of the first note in 1923 to the execution of the renewal note for the recovery of which this action was brought, which evidence was refused by the court. These records were identified by the president of said bank as the records of said bank, kept in the usual course of business; that they were kept by bookkeepers under his supervision and control and that said bookkeepers were absent from Atoka county.

Section 653, Comp. Stats. Oklahoma, 1921, provides:

"Entries in Account Books. Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries that such entries are correct, and when made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county, or upon proof that the same were made in the usual course of business."

"Q. Mr. Roberts,—Is this a record kept under your direction, in the regular course of business in the institution over which you presided as president? A. Yes, sir."

It was error to exclude this evidence, which was competent. From a careful review of this evidence and briefs submitted by counsel, we are of the opinion that defendant Banta should not be permitted to say that this was a note executed by him in favor of the bank for the accommodation of the bank to relieve him from payment therefrom. This note was considered as an asset of the bank from February 5, 1923, until the bank closed its doors on October 27, 1926, during which time the depositors and creditors of said bank had a right to rely on the records of the said bank showing that this was a good and valuable note.

It does not accord with right and justice that one who has chosen to put himself in the front of a negotiable instrument, as in this case, for the benefit of his friend, should not also abide the consequences thereof. The defendant Banta desired that said Phillips be released for a part of his obligation which Phillips had created between the bank and said Phillips, and, as a result, it is proper to conclude that the bank refrained from taking any action against said Phillips in collecting the indebtedness evidenced by the note in question. His acts and conduct should estop him from denying his obligation to said bank after he has chosen to so place himself in the front of said negotiable instrument. At no time was any agreement ever made on behalf of the bank or any official thereof that said note was to remain as an asset of said bank for any particular time, not even to the date of its maturity, and it is self-evident by reason of the various renewals of said note that said defendant Banta acquiesced in said note remaining in said bank; and no promise was ever made by said bank or any official thereof to hold the said Banta harmless by reason of his delivering said original note to said bank.

The defendants were required to assume the burden of proof and to make out their defense by a fair preponderance of the evidence. The defendant Banta admits the execution and delivery of the original note, but contends that there was a nondelivery of the note in question and that there was a failure of consideration for the execution of the note. The evidence shows that there was a delivery of the original note, which was executed in the year 1923, and which was secured by a warranty deed in form, and that plaintiff signed the aforesaid renewal of said note. From the foregoing authorities and review of the evidence in this case, we are of the opinion that the defendants failed to meet these defenses by a fair preponderance of the evidence.

As to the question of payment, this is also an affirmative defense. The only evidence offered in any way tending to show payment was an attempt by the defendant Phillips to show an accord and satisfaction. This was attempted by showing that the deed, executed in the year 1923, for the purpose of securing the debt evidenced by the original Banta note, was filed of record April 27, 1925, and contending that it was in accord and satisfaction of the indebtedness in question. Suffice it to say that the evidence offered was not, in our opinion, sufficient to sustain this defense of payment.

In view of the foregoing, we hold that the judgment of the trial court should be reversed, and remanded, with directions to

enter judgment for the plaintiff against said defendants Jesse W. Phillips and Ira J. Banta for the amount sued on herein in accordance with the tenor of said note, and for the foreclosure of said deed as a mortgage.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.

CLARK and RILEY, JJ., absent.